W. C. BARNES et al. vs. BOARD OF SUPERVISORS, PIKE COUNTY.

51 305
82 177

1. CONSTITUTIONAL LAW:  *Location of county site.  Power of legislature in relation thereto.*

The legislature has the constitutional power to enact a law to submit to the voters of a county the selection of a county site.

2. SAME:  *Board of registrars.  Act of 1873.*

This act did not displace the then existing board of registrars, but merely charged the commissioners to appoint registrars, and the members of the old board held over until their successors were appointed and qual ified; and the old board had the power to hold the special election provided for in the act approved March 21, 1873.

3. SAME:  *Election; irregularity.*

It is not every irregularity in the registration of voters or the holding of an election that will invalidate an election, unless it is shown that it would have changed the result.

APPEAL from the Chancery Court of *Pike* County.

Hon. E. G. PEYTON Jr., Chancellor.

This action was brought against the supervisors of Pike county by the voters and tax payers thereof to test the validity of an act .of the legislature passed in 1873, and the proceedings under it, for the permanent location of the seat of justice of Pike county.

The bill charges that the act was unconstitutional, and that the pretended board of registrars acted without authority of law, and held an election for the "removal" or "no removal" of the seat of justice of Pike county.

The bill was filed to enjoin the board of supervisors of Pike county from collecting a tax levied as part of the amount required to buy land and build a court house and jail at the town of Magnolia, in said county.   On motion, the court dissolved the injunction; and the case comes to this court on appeal from that decree.

*Cassidy & Stockdale,* for appellants:

The act of March 21, 1873, p. 173, is unconstitutional.   Alcorn *v.* Hamer, 38 Miss., 750 ; Williams *v.* Cammack, 27 id., 209 ;

Cooley's Con. Lim., 117, 125 ; Cent. Law Jour., Nov. 27, 1874, p. 592. The repeal of an act authorizing a course of proceedings by a public officer invalidates the proceedings if unfinished. Rice v. Wright, 46 Miss., 682, 683. The rule of law which the facts in this case suggest is well settled in Pradat v. Ramsey, 47 Miss., 33. As to jurisdiction, see Coulson v. Harris, 43 Miss., 745 ; Osborn v. Bank of U. S., 9 Wheat., 738, 838 ; 43 Miss., 746, 747 ; High on Inj., 78–794 ; Perry v. Kennear, 42 Ill., 160 ; Colton v. Hanchett, 13 Ill., 115 ; Mayor of Baltimore v. Gill, 31 Md., 375 ; Harney v. Indianapolis R. R. Co., 32 Ind., 244 ; New London v. Brainard, 22 Conn., 552 ; Graham, State Treas., v. Horton, 6 Kans., 343, 355 ; High on Inj., §§ 796, 801–4 ; Green v. Green, 34 Ill., 320 ; Green v. Oakes, 17 id., 249 ; Rice v. Smith, 9 Iowa, 570–79 ; Pope v. Halifax, 12 Cush., 410. The tax is a lien on the land, and clouds title. High on Inj., § 367 ; Scofield v. City Lansing, 17 Mich., 437 ; Dean v. City Madison, 9 Wis., 402.

*Chrisman & Thompson,* for appellees :

The court had no jurisdiction. 2 Story Eq., 875 ; State v. Johnson, 475 ; Code 1871, § 20 ; 3 S. & M., 529 ; 36 Miss., 385. Complainants had a remedy at law : 1. By appeal from the board of supervisors. Code 1871, § 1383 : 2. By writ of prohibition. 3 Black. Com., 112, 113, 114 ; Buller, N. P., 218 and note ; 9 S. & M., 267. It is an attempt to enjoin the commission of a trespass. High on Inj., 460, 552 ; Story Eq., 925 ; Cooley Con. Lim., §§ 118, 598, 618.

*T. E. Packwood,* on same side, cited the following : Code 1871, §§ 1383, 1517 ; Acts 1873, p. 72, 73 ; Cooper v. Moore, 44 Miss., 391 ; Code 1871, §§ 307, 317, 350 ; 7 Bacon Abr., 283 ; Fowler v. Bebee, 9 Mass., 231 ; Justices of Jefferson v. Clark, 1 Mon., 86 ; Ex parte Bollman, 4 Cranch, 75 ; People v. Collins, 7 Johns., 549 ; McKim v. Somers, 1 Penn., 297 ; 2 Kent Com., 330 ; Code 1871, §§ 353, 354, 367 ; Commonwealth v. Quarter Sessions, 8 Barr, 395 ; Commonwealth v. Painter, 10 id., 214 ; Bank of Rome v. Village of Rome, 4 Smith, 38 ; Corning v. Greene, 23 Barb., 35 ; Clarke v. Rochester, 24 id., 447 ; Steward v. Jefferson, 3 Harr., 335 ; State v.

Parker, 26 Vt., 357 ; People v. Reynolds, 5 Gil. (Ill.), 1 ; Slack
v. M. & L. R. R. Co., 13 B. Mon., 1 ; Wilmington R. R. v. Com'rs
Clinton County, 1 Ohio St., 77; Marylard Burgess v. Pue, 11
Gilm. (Ill.), 000 ; Stein v. Mobile, 24 Ala., 591 ; Bull v. Read, 13
Gratt., 78 ; Aurora v. United States, 7 Cranch, 382 ; Johnson v.
Rich, 9 Barb., 680 ; Talbot v. Dent, 9 B. Mon. (Ky.), 526.

SIMRALL, J., delivered the opinion of the court.

This litigation was instituted to test the legality of an act of
the legislature, passed in 1873, pp. 173, etc., and the proceedings
under it, for the permanent location of the seat of justice of Pike
county.   The act submitted the question of a removal of the
county seat to either Summit or Magnolia, to the popular vote.
The complainant insists, first, that it is *ultra vires* of the legisla-
ture to refer the question 'to a vote.   Their position is, that the
legislature ought itself to have designated the place, or have
appointed commissioners to make the location, without advancing
any reasons in support of the competency of the legislature to
pass an act of this character ; this is, to allow the electors by vote
to decide the question of removals and the selection of the place.
We refer to the cases in our own books (which are abundantly
supported in the other states), deciding in favor of the legislative
power to enact such laws.   Williams v. Cammack, 27 Miss., 221 ;
Alcorn v. Hamer, 38 id., 652.

Many of the county seats have been located by a popular vote.
The practice has been sustained by legislative precedents, and
the principle has been sanctioned after careful judicial scrutiny.

The complainants charge next, that by the act of 15th April,
1873, amendatory of the election laws, pp. 72, 73, the boards of
registrars, constituted by previous laws, were abolished, and not-
withstanding such repeal, the old board, composed of Roan, Craw-
ford and Brent, proceeded to make a registration of voters. That
they published notice that they would so register on the 28th,
29th, and 30th of May, 1873, for an election to be held the 2d of
June; that they registered one day more, on the 31st, but

no notice of this fourth day was given, except on the railroad ; 255 were registered without authority of law.

These registrars held the election on 2d June, at which they received votes not only of " removal " or " no removal," but also for the towns of Summit and Magnolia, which they had not notified the people they would receive.

The act to provide for the permanent location of the seat of justice of Pike county, of March 21, 1873, in the first section directs the election to be held the first Monday in June, 1873, " under the direction and supervision of the board of registrars, * * and in accordance with the statute regulating elections." The electors to place on their tickets " removal," or " no removal" and as they prefer " Summit " or " Magnolia " as the place for county seat.

The second section is, " If it shall appear that a majority of all the votes cast are for removal, and for either Summit or Magnolia, then the place elected shall thereafter be the permanent seat of justice." So soon as the seat of justice has been determined, then the board of supervisors shall procure suitable accommodations and remove the records to that place.

But it is said that the registrars who conducted the registration and held the election were displaced by the act of the 12th March, 1873, pp. 72, 73, 74. The first section of this act directed the circuit judge, the chancellor, and the sheriff, each to appoint one registrar for the counties, " on or before the first Tuesday after the first Monday of June, 1873, and annually thereafter." By the last section, this statute was to go into immediate effect. This statute and the one in reference to permanent location of the seat of justice of Pike county, were passed by the same legislature at the same session, and within nine days of each other. The election in reference to the county seat is appointed to take place one day before the judges, chancellors, and sheriffs are required to make appointments of registrars. The legislature intended that the special election should be conducted by the board of registrars as it was constituted and organized at the time. If the old board

had not been superseded by new appointees, then the old board should act. The latter statute does not abolish the office of registrar. It only creates new commissioners to make the appointment; until, therefore, new appointments were made, the registrars in office at the passage of the act remained in office until their successors were qualified. This is abundantly provided for by §§ 307, 350, code 1871. The latter section makes the term of office of the registrar one year, and until his successor shall be appointed. The incumbent at the date of the passage of this act would rightfully remain in office, competent to discharge all its functions until displaced by those selected by the circuit judge, chancellor, and sheriff.

Although the complainants make several other special objections to the proceedings, under the special act, terminating in the order for the removal of the records and public documents to Magnolia as the place chosen for the county seat, yet they all seem to resolve themselves into the one or the other of the propositions already considered.

The registrars had no right to give notice of election, to register voters and conduct the election because, as complainants allege, they were not in office *de jure* or *de facto*. The bill also avers that they did in fact register voters on the 31st of May, when the general notice published that they would register on the 28th, 29th, and 30th of May. The notice for the 31st was given on the railroad, but not in the eastern part of the county. This conduct is characterized as fraudulent, and by means of it, it is said that about seventy persons did in fact register, all of whom, except three or four, voted for "removal."

The allegation on this point is obscure. We suppose that the complainants mean that seventy voters were registered on the 31st and therefore they ought to be excluded from the count; but if it were conceded that they were not qualified voters, and should be excluded, it would not have the effect to change the result, there being still left a majority for removal.

Complainants also insist that the notice of the election is in-

sufficient; that it is wanting in detail. The specific objection is that it did not inform the electors that they must vote for the new site, as well as on the question of removal. The published notice is contained in the record, and refers to the subject upon which the vote was to be taken, and the "act" which authorized it. The returns of the election show conclusively that the voters were not deceived, for of the total votes cast, all except an insignificant few, voted for the one or the other of the places proposed for the new county seat.

It is also averred that the special act made no provisions for registration, therefore the entire action of the board in that respect was without warrant of law. It is then shown that 255 names were registered, of which 125 voted for Magnolia, which was larger than the majority cast for that place.

But the Code of 1871, § 353, requires the registrars, after due. notice for three days, anterior to the special election, to hold a session at the county seat "for the purpose of registering * * all such persons as have become of legal age." * * This was the authority under which the registrars held . their session at Holmesville.

It is also alleged that the registrars transferred illegally 41 voters, who could only vote at certain places, to other places, who were permitted to vote. What effect their votes did have on the result is not shown. No more was intended to be averred than that these persons were allowed to vote out of the precinct, or voting district in which they lived. Perhaps that might be allowable on a liberal interpretation of the act of the 8th of April, 1873, pp. 72–5, pamphlet.

Our examination of this case has brought us to these conclusions —

*First.* That the act providing for the permanent location of the seat of justice of Pike county is not obnoxious to constitutional objections, but is a valid law.

*Second.* That the board of registrars who conducted the election were legally in office and competent in the premises.

*Third.* Although it was irregular and improper to hold a session for registration on the fourth day, the " 31st of May," it is not shown that those who registered on that day could or did change the result, and so of any other irregularities that have been specified.

It follows that there was no error in sustaining the motion to dissolve the injunction.

Decree affirmed.