Ex rel. David A. Rice, prosecuting attorney v. Ephraim Shay, county treasurer.

*Location of county seat and county offices.*

The legislature in organizing a county may provide for the original location of the county seat by commissioners named in the act.

Where a county seat has been located according to law, it remains where it was established until lawfully removed.

Mandamus lies to compel the county treasurer to keep his office at the county seat.

Mandamus. Submitted April 9. Decided April 28.

*D. A. Rice* and *M. V. & R. A. Montgomery* for relator.

*Sawyer & Bishop, Fallass & McIntyre* and *Hughes, O'Brien & Smiley* for respondent. Legislative power to locate county seats cannot be delegated, Cooley's Const. Lim. 116; *Shumway v. Bennett* 29 Mich. 451; *People v. Collins* 3 Mich. 343; *Maxwell v. Bay City Bridge Co.* 41 Mich 453; *Barto v. Himrod* 8 N. Y. 483.

GRAVES, J. The Legislature in 1869 passed an act, which took effect March 30th, to organize the county of Wexford (3 Session Laws 1869, p. 1085, Act 386), and by the ninth section provided for locating the county seat. The provision reads as follows:

"Sec. 9. The county seat of said county shall be and is hereby located in township twenty-four north, of range twelve west, at or near what is called Manistee bridge; and Henry J. Devoe, Isaac U. Davis, and E. C. Dayhuff are hereby appointed commissioners to locate the same. If said commissioners, or any two of them, shall fail to locate said county seat within one year from June next, then the board of supervisors and county clerk of said county shall locate the same."

May 17, 1869, the said commissioners made the location in accordance with the statute, and there has been no change whatever so far as the record shows. The relator is the prosecuting attorney and the respondent the county treasurer, and the latter keeps his office at his residence in the village of Haring, some twenty-five miles from the point designated, and refuses to keep his office thereat.

The application of relator is for a *mandamus* to compel him to do so. He sets up, by way of cause against the application, that the public opinion of the county has always been divided upon whether the county seat was actually established in point of law at the place designated, and that there has never been any general acquiescence; that the county business has been scattered and not concentrated there, and that the place has been more ignored as the county seat than respected; that five meetings of the board of supervisors have been held there, but as he is informed and believes, they have established county jails at two points several miles therefrom, and that the sessions of the circuit court are held at two places considerably removed. But the main objection raised is that the Legislature had no power to invest commissioners with authority to select the immediate spot for the county seat.

If the place was designated according to law, the

officials of the county and the people of the county are bound by it until a change is lawfully effected.    Any other course would end in anarchy.

We have no doubt whatever of the validity of the provision in question of the act of 1869.  It will not be denied that the original designation of a county seat pertains to the power to organize the county.  The provisions of the Constitution and our system of internal government presuppose the existence of a county seat as one of the essential features of county organization, and the Legislature is the proper authority to provide originally for its establishment.  It would not be easy to find any other authority.  After it is once established through the agency of the Legislature, the general provisions for removal attach, and the people may decide for themselves.

The original location is, therefore, not necessarily permanent.  But the Legislature in executing its duty in this regard, which is administrative rather than strictly legislative, must act upon practical views and not hairsplitting theories.  It is not bound to proceed in a body to make a personal view, or required to send a committee of its own members to see and report.  It may, as was done in this case, prescribe the site approximately, and then leave it to commissioners of its own selection to fix upon the exact spot.  Such has been the usage ever since the State has had existence.

The numerous roads laid out under State authority have been established on the same principle, and the original seats of the old counties were mostly so fixed. The same course has been pursued in regard to many of our State institutions and State buildings, and the site of our present capital was so determined.   We are of opinion that according to the record before us the county seat of Wexford was lawfully established at the place designated by the commissioner, and that inasmuch as no change has been made, the provision of the Constitution applies which requires the county treasurer

and certain other officers to hold their offices at the county seat, and it is the duty of the respondent to obey. Const. art. x, § 4.

The writ must issue, but no costs are allowed.

The other Justices concurred.