COUNTY COMMISSIONERS OF LAKE COUNTY, PLAINTIFFS IN ERROR, VS. STATE OF FLORIDA EX REL., DEFENDANT IN ERROR.

1. The general provision of section 4, of Article VIII, of the Constitution, declaring that "the Legislature shall have no power to remove the county seat of any county, but shall provide by gener .

law for such removal," is a limitation upon the power of the Legislature, and the effect of the proviso thereto : "*Provided, That in the formation of new counties the county seat may be temporarily established by law,*" is to qualify such limitation, and reserve to the Legislature, when forming a new county, the power to establish for the same a temporary county seat, which shall not be subject to such limitation, but shall be the county seat only until the permanent county seat shall be established. in the manner provided by the special act organizing the county.

2. The grant of power to a Board of County Commissioners, or a majority of them, to locate the temporary county seat of a new county is not a delegation of the law making power, nor is it prohibited by the Constitution of this State in legislation organizing a new county.

3. The act approve l May 27, 1887, entitled "an act to create and establish the county of Lake from portions of Sumer and Orange counties;" and providing for a location of a temporary county seat by the County Commissioners, or a majority of them, and also providing for an election for the location of a "permanent county seat," and that the place obtaining a majority of all the votes cast shall be the county seat of said county, as provided by the general laws of this State, is not a delegation of the law making power nor a violation of the Constitution, in so far as the act authorizes the temporary location of the county seat ; nor is the provision of the act for the location of the permanent county seat, within the limitation of section 4, of Article VIII, of the Constitution, upon special legislation, but is excepted from such limitation by the proviso thereto.

4. The removal of a county site is matter properly connected with the establishment of a county within the meaning of section 16, of Article III, of the Constitution, and the provisions of the above act, as to the permanent location of the county site, are covered by its title within the meaning of such constitutional provision.

5. A mandamus will not lie to compel the performance of an official duty until there has been an actual default in the performance thereof by the officer upon whom it is imposed.

Writ of Error to the Circuit Court for Lake county.

The facts of the case are stated in the opinion.

*J. B. Gaines* and *A. W. Cockrell & Son* for Plaintiffs in Error.

*Alex. St.-Clair Abrams* for Defendant in Error.

MR. JUSTICE RANEY delivered the opinion of the court:

I. The statute creating and establishing the county of Lake, approved May 27, 1887, p. 154, Pamphlet Laws, is entitled "An act to create and establish the county of Lake from portions of Sumter and Orange counties." The first three sections define the boundaries of the new county, name it, declare what Congressional and what judicial district it shall form a part of, and provide for the appointment of the several county officers by the Governor.

The fourth section enacts: "That the Board of County Commissioners of Lake county shall, within thirty days after this act goes into effect, meet at such place in said county as they, or a majority of them, shall designate and appoint, which place shall be the temporary county seat of said Lake county until the permanent county seat is established by the votes of the people of said county." The fifth section is as follows: "That it shall be the duty of the Board of County Commissioners of said county, at their first meeting, to provide for an election, to be held within ninety days thereafter, for the location of a permanent county seat for said Lake county, and the place obtaining a majority of all the votes cast shall be the county seat of said county, as provided by the general laws of this State. If, at said election, no place voted for shall obtain a majority of all the votes cast, it shall be the duty of the Board of County Commissioners to order another election, within ninety days thereafter, and if, at such second election, no place shall obtain a majority of all the votes cast, to hold

succeeding elections until a permanent county seat is established according to law."

Section 4, of Article VIII, of the Constitution of 1885, is in the following language: "The Legislature shall have no power to remove the county seat of any county, but shall provide by general law for such removal; *Provided*, That in the formation of new counties the county seat may be temporarily established by law."

The preceding section of the same article declares the power of the Legislature to establish new counties and to change county lines.

The pleadings show that Bloomfield was designated and appointed by the County Commissioners as their place of meeting under and according to the fourth section of the statute, and that they have held their meetings and taken official action there as to elections for the permanent county seat.

It is contended on behalf of the plaintiffs in error that the statute in question is unconstitutional in so far as it provides for the establishment of the permanent county seat. They argue that the proposed selection and establishment of such " permanent county seat " is in effect a " removal " of a county seat within the meaning of the constitutional provision set out above, and that it cannot be provided for or effected by special legislation, as is attempted in this case. They assent to the power of the Legislature to temporarily locate a county site through the instrumentality of Commissioners, as provided by the fourth section of the statute, though not altogether satisfied with the reasoning by which the authorities reach this conclusion.

The position of counsel for defendant in error is that the statute has failed utterly to lawfully establish a temporary

county seat, as it has attempted to delegate this power to a majority of the Board of County Commissioners; but that even if the statute did so, and Bloomfield was selected as the temporary county seat, it was and is by the terms of section 4 only intended to be the meeting place of the County Commissioners. No court, he says, can be held there, or at any but a permanent county seat; nor has this act, he argues, prescribed any *place* for holding the courts in accordance with section 8, of Article V, of the Constitution, which provides that the Circuit Judge shall hold at least two terms of his court in each county " at such times and *places* as shall be prescribed by law, and may hold special terms." He further contends that until a permanent county seat has been established there can be no " removal " within the meaning of the Constitution.

In view of the language of the fourth section of the statute we find it impossible to avoid the conclusion that the Legislature intended that the place adopted by the Commissioners for their meetings, should " be the temporary county seat of said Lake county until the permanent *county seat* is established," in the manner provided by the fifth section of the act. It is equally difficult to withhold from the law-making power the intent and purpose that for the same period of time, and at the place so designated by the County Commissioners, all offices should be kept and all official acts done that the general laws of our State provide for being done at a county seat. If it be that the Legislature has failed to prescribe the *place* for holding the terms of the Circuit Court in this county under section 8, of Article V, of the Constitution, this omission does not of itself make Bloomfield any the less the temporary county site for all other purposes.

The purpose of section 4, of Article VIII, of the Constitution, considered independently of the proviso, was to pro-

hibit the Legislature from removing the county site of any county, otherwise than by a general law applicable to all cases of removal. The idea of the removal of a county site necessarily involves the previous establishment of one. This section, considered either with or without the proviso, does not have the effect to prohibit the Legislature from establishing a county site when making a new county, for the power to make a county, declared by section 3, of Article VIII, necessarily includes the power to create and do everything necessary and proper to its perfect organization, that is not prohibited by other portions of the Constitution, and a county site is, to say the least, a proper if not a necessary element of county organization.

It is equally clear that but for the proviso, the terms of the section would prohibit in any other way than according to the mode prescribed by a general law, a removal of the county seat established in the formation of a new county. The purpose of a proviso is to except something from or restrain the generality of what precedes it. Minis vs. U. S., 15 Peters, 423; Wayman vs. Southard, 10 Wheat., 1; 1 Wash., C. C., 119. As then the general provision of the section would not have prohibited the Legislature, when forming a new county by special act, from establishing a county site that could be changed or removed only under the provisions of the general law governing removals of county sites, yet would have deprived the Legislature of the power to establish even a temporary county site that would not be subject to the indicated restraint upon removals, the only purpose the proviso can or does serve is to authorize the Legislature, when organizing a county to establish, by special act, a county site freed from the limitation of removal by general law alone. Of course a proviso is to be strictly construed, and

nothing not fairly within its terms is taken by it out of the general provisions of the section to which it is attached, but it is to be given some effect and not to be held to merely declare an effect which the section, of which it is a part, would have without it. If we say that it merely authorizes the Legislature to make a location, subject to change only pursuant to general law, we practically eliminate the proviso by declaring it of no effect to except anything from the general restriction imposed by the section, for without such proviso the section permits such a location of a county site of a new county by special act. The purpose of this proviso was to enable the Legislature to provide county seats for new counties until permanent county seats could be established in such manner as in its wisdom it should deem proper, or in other words, to provide a provisional or temporary county seat until the permanent organization of the county, in so far as a county seat is concerned, should be perfected as directed by the act creating the county. In view of the mode adopted in the case before us for establishing the county seat permanently—a mode most responsive to the sentiment of the people, and doubtless the one deemed by the framers of the Constitution, and by the people when adopting it, as most likely to be followed by the Legislature—the power secured to the lawmakers by the proviso was indispensable.

The purpose of the Constitution, as indicated by the proviso in question, to permit the Legislature to provide a provisional or temporary county seat until the permanent one should be located, has been acted upon by the law makers in this case, and the clear purpose of the Legislature was that the place selected by the County Commissioners should be the county seat until the electors of the county should, by a majority vote, select a place for a permanent seat. It

is manifestly not the purpose or intent that the place selected by the Commissioners should remain the county site until proceedings for a change of location should be taken in accordance with the general law regulating the change of location of county sites. The special provisions of the Lake county act, and the absence from it of the provision of the general law as to a petition to the County Commissioners for a change, which petition is jurisdictional to the power of the Commissioners to call an election under the general law, fully show this.

When the county site of Lake, or of any new county, is once permanently located in the manner prescribed by the statute organizing it, then the Legislature will have exhausted its power of special legislation as to providing the county site of such county, reserved to it by the proviso, and as to the subject of any further removal of the county site, the Legislature will be under the limitation of the general provision of the section.

The expression "*permanent* county seat," as used in the Lake county statute, is the antithesis of the other expression, "*temporary* county seat," the plan of the Legislature as to organizing the county being that it would leave to the voters of the county the selection of that county seat which should be subject to removal only under the provisions of the general law, and make provision for a "temporary" seat to answer the immediate exigency until such "permanent" seat should be located. The temporary seat was but one step in the organization of the county in so far as its county seat was concerned. The place chosen by the majority of the votes is to be "the county seat of said county, as provided by the general laws of this State." Section 5, of the statute.

There is nothing in the case of Baggot vs. Board of Supervisors of Antrim county, 43 Mich, 577, (cited by counsel

for plaintiffs in error from 5 N. W. Reporter, 1018,) inconsistent with our conclusion. The constitutional provision of Michigan was: " No county seat once established shall be removed until the place to which it is proposed to be removed shall be designated by two-thirds of the Board of Supervisors of the county, and a majority of the electors voting therein shall have voted in favor of the proposed location in such manner as shall be prescribed by law." There was a general law enforcing the section. The difference between this section and the section of our Constitution is obvious. There is no provision or exception upon the general limitation, though the place to which a removal can be made must be designated by two-thirds of the Supervisors and a majority of the electors voting, nothing is said as to the enactment of a special law subject to these provisions, in the case of any county. The decision of the court, as embodied in the head note, is that " the proposition for the removal of a county seat may originate with the Board of Supervisors. No previous action of the Legislature is necessary to give the board authority to act. It is immaterial that in the particular case the county seat was permanently located by the Legislature when the county was organized. The permanent location is only until a removal takes place in accordance with law." There was no question of power as to special legislation. Though the constitutional provision was necessarily regarded as a limitation upon the power of the Legislature, the court and counsel agreed that it left the Legislature all power over the general subject that could be exercised consistently with it. This principle is applicable to the general provision of the section in our case, and it is evident that the proviso was a reservation of power to the Legislature.

II. Both upon authority and principle we are satisfied that there is nothing in the position of the counsel for the

defendant in error as to there being any improper delegation of legislative authority in authorizing the County Commissioners, or a majority of them, to select a place for their meetings and providing that the place so designated shall be the temporary county seat until the permanent one is established in the manner provided by the act. In the case of Baggot vs. Board of Supervisors, *supra*, Judge Cooley says: "Unquestionably if the Legislature may propose the removal it may also delegate the authority to propose it." The authority of the Legislature to provide for the location of county sites by means of Commissioners or through the instrumentality of an election by the legal voters of the county is fully established. Baggot vs. Board of Supervisors, *supra* ; State *ex rel*. Rice vs. Shay, 43 Mich., 380 ; Dillon M. C., sec. 140, (92) note 4 ; Alexander vs. People *ex rel.*, 7 Col., 155 ; Territory *ex rel*. vs. Board of Supervisors, 12 Pacific Reptr., 730, Sup. Ct. Arizono, 1887 ; Barnes vs. Board of Supervisors, 51 Miss., 305 ; Com. *ex rel*. vs. Painter, 10 Penn. St., 214; Elwell *et al*. vs. Tucker, 1 Blkf., 285 ; Armstrong vs. Board of Commrs., 4 Blkf., 208. There are cases in which it has been done through the instrumentality of Commissioners and in which the validity of the legislation or establishment under it has been contested on other grounds, though the question raised here has not been made. It is not a delegation of the law-making power, but is simply the adoption of one of the several admissible modes which it, in its discretion, may use, or the use of an instrumentality it may clearly use, for doing what it has the power to do. Independent of the section in question of the Constitution, (sec. 4, Article VIII,) it would doubtless not be contended for a moment that the selection could not be made through the instrumentality of Commissioners, and there is clearly nothing in the section from which it can be inferred or argued that when the Constitution, by the pro-

viso, reserved to the Legislature the right of temporarily establishing a county seat by *law* it did not mean that it could pass the same kind of a law and call into use the same instrumentalities under it, as it could have done in establishing such a temporary county seat had there been no such section in the Constitution. Where the Legislature has the power to do a thing by law, and the Constitution has not prescribed the manner of doing it, or the nature of the thing is not such as to require that it be done directly by the Legislature, it may, through the provisions of its law, use any proper instrumentality for effecting the result to be accomplished. Any other rule would render the doing of many things by law utterly impracticable. A county site established by Commissioners designated by law is one established by law.

III. It is contended on behalf of plaintiffs in error that the 5th and 6th sections of the statute in question are not within the title of the act. The title and the 5th section are set out above. The 6th section relates to the qualification of electors and their registration for the purposes of the court-house election.

The argument concedes that an original establishment of a county site by the Legislature, whether done directly by it, or indirectly through Commissioners, is constitutionally within such a title as this act has, but contends that the Legislature exhausted its powers of special legislation in the temporary location of the county seat, and that the provisions of the sections mentioned, whether they have regard to a temporary or a permanent site, presupposed such exhaustion and the full creation and habilitation of the county of Lake in the sisterhood of counties, and provide a method for the voters of the county, as one fully organized, to change their county seat, whereas the title of the act looks·

merely to the investiture of the county with such habiliments and cannot be made to look beyond it, or to embrace legislative matter not pertaining to the organization of the county; that the original designation of a county site *does* pertain to the creation of a county, but the method provided in those sections whereby the people of an organized county may change or permanently establish their county site is *not* matter properly or otherwise connected with the creation or establishment of a county.

Section 16, of Article III, of our Constitution, provides that each law enacted in the Legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title.

The title, " An act to *create and establish* the county of Lake, from portions of Sumter and Orange counties," is, in our opinion, broad enough to cover any provision as to the location of the county site or a change of the same at any period or stage of the existence of the county. Provisions for such change, whether from a temporary, or a permanent, an original, or a subsequent location, are a part of the county government established. Any provision relating to its organization or government, though for use in the future, is as much matter properly connected with the establishment of the county, as are those relating to the earliest stages of its existence. The subject of the establishment of a county, within the meaning of the constitutional provision in question, includes not merely what is necessary to put it on its feet as a county, but anything that may concern its future existence or operation. Nothing is more properly connected with the subject of establishing a county than making provision for a change of the county site in the future. Cooley Const. Lim. M., p., 144 ; Morford vs. Unger, 8 Iowa, 82 ; 11 Ibid, 482 ; 27 Ind., 223 ; Mayor &c., vs. State, 30

Md., 112 ; State vs. Union, 33 N. J. L., 350 ; Hunboldt Co. vs. Churchill Co. Commrs., 6 Nev., 30.

The objections urged to the constitutionality of the statute are untenable.

IV. The alternative writ issued April 11th, 1888, recites that the relators have filed their petition against the defendants, County Commissioners, " charging that the defendants, as such Board of County Commissioners, have failed and refused to order another election since the recent election for county seat of Lake county, held on the 10th day of March, 1888, although requested so to do by the citizens of said county; and further averring and charging that the defendants do not intend and will not order said election, as they are required by law to ; do and further averring and charging that there is no county seat in said county designated by law, and that great injury will be done to said county and to the people thereof if said election is not held and ordered without delay," and commands the Commissioners to assemble at their usual place of meeting on Monday, April 16th, and order an election for county seat of the county, to take place within the period prescribed by law, or to show cause why they should not do so.

A demurrer was interposed to this alternative writ, but was overruled.

By referring to the fifth section of the act the duties of the County Commissioners, so far as they are involved in this proceeding, will be found. They were at their first meeting to provide for a county seat election to be held in ninety days thereafter ; and if at such election no place voted for obtained a majority of all the votes cast it was made their duty to order another election within ninety days thereafter, and if at this second election no place obtained such majority they are to hold succeeding elections until a permanent county seat is established according to law.

In the absence of any allegation to the contrary, it is to be assumed that the County Commissioners held their first meeting within the time prescribed by the fourth section of the act, and that at such first meeting they called an election to take place within ninety days thereof. The act having been approved May 27, 1887, the election alleged by the alternative writ to have been held on March 10, 1888, must be assumed to have been at least the second one held under the act. Any other assumption would imply an omission of duty. The only complaint of the alternative writ is that the commissioners have failed and refused to order another election since the one of March 10th, although requested so to do by the citizens of the county, and to this is added the charge, that they do not intend to, and will not order an election, as they are required to do by law.

This writ shows no failure or omission of duty on the part of the commissioners. Even if it be that the statute contemplates that a third or subsequent election should take place within ninety days of its predecessor, the lapse of thirty days from the March election, without calling another, does not constitute an omission of duty in the premises and authorize a mandamus. Assuming even that thirty days notice of election should be given, and certainly no longer notice can be assumed as necessary, there was still no default. If the ninety day limit was applicable it was still the province of the commissioners to fix the day on which the election should be held, and the circumstances of this case show that when the writ was issued an abundance of time still existed for doing it and giving full notice to the people of the same. There must be an actual omission of duty, and it must be clearly shown by the alternative writ, before relief by mandamus will be granted. If in any case the people's right to an election will be lost by the omission of officers to call it on a day fixed by law, and the duty omit-

ted, will not be enforced, (McConihe vs. State, ex rel, 17 Fla., 238, 271,) there is yet nothing in the provisions of this statute that sustains such an idea as applicable to it or that would justify a mandamus before there had been an actual and clear default of duty in calling one.

Allegations that officers do not intend or will not perform their duty do not authorize the issusance of the writ.   State ex rel. vs. Board of County Commissioners, 17 Fla., 706; High on Extraordinary Legal Remedies, sec. 12.    The statements of the writ as to the request of the people, and that there is no county seat, like the allegations of injury to the county, do not change the duty nor lessen the discretion of the Commissioners.

The demurrer to the alternative writ should have been sustained.   It, and not the petition, is what the defendants are to plead to, and should state the facts constituting the duty to be performed and show the default of the defendants therein.    High on Extraordinary Legal Remedies, secs. 536, 537, 538, 539.

As is evident from a preceding portion of this opinion, we do not think that any petition by a third of the registered voters of the county praying a change of the location of the county site was necessary.    The petition provision of the general act as to removal of county sites has no application to the Commissioners of Lake county in calling an election under the fifth section of the Lake county act, which requires no such petition.

The judgment is reversed and the case remanded for proceedings not inconsistent with this opinion.