J. J. CANOVA, PLAINTIFF IN ERROR, VS. DAVID A. WILLIAMS, MARSHAL OF THE CITY OF JACKSONVILLE, DEFENDANT IN ERROR.

1. Where all the provisions of a city ordinance are connected in subject-matter depending upon each other, operating together for the same purpose, or otherwise so connected together in meaning that it can not be presumed that the legislative power of the city would have passed the one without the other, and some of the provisions are beyond the power of the  city to enact, the whole ordinance will be declared void; but where some parts of the ordinance are within the power of the city to enact and are not connected with or dependent upon the invalid portions, the ordinance may be void in part and valid as to the residue.

2. The city of Jacksonville is not required by its charter to levy its license taxes by annual ordinance, but has power to enact a general ordinance of this character to remain in force until repealed in some manner provided for by law.

3. The city of Jacksonville has power under its special charter and the general revenue law of 1895 to tax any business, profession or occupation engaged in or carried on within the city, whether such business, profession or occupation be taxed by the State or not, and power to fix the amounts to be charged therefor for purposes of revenue, and is not limited to fifty *per cent.* of the State tax upon those businesses, professions or occupations taxed by the State.

4. The city of Jacksonville has no power to segregate the several

elements of right that accrue to the citizen under one taxable privilege as recognized, defined and declared by the general statute law of the State, and to tax each of such elements as a separate and distinct privilege of its own creation, by dividing several privileges into many, and requiring separate licenses to sell special articles which necessarily belong to one State privilege and which the State permits to be sold under one license.

5. Under Section 5, Article IX, constitution of 1885, the legislature may delegate to cities and towns the right to select the occupations upon which they shall impose license taxes for municipal purposes, and the right to fix the amounts of license taxes to be imposed by them.

Writ of error to the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*W. B. Young*, for Plaintiff in Error.

*J. M. Barrs*, for Defendant in Error.

CARTER, J.:

On November 20, 1899, upon the petition of plaintiff in error a writ of *habeas corpus* was issued by the Circuit Court of Duval county, directed to defendant in error, commanding him to produce the body of the petitioner and to certify the cause of his detention. Such proceedings were thereupon had that on the same day the court entered judgment overruling a demurrer to the return of defendant in error, denying petitioner's motion to be discharged, and remanding him to custody. A writ of error to this court was granted for the purpose of reviewing this judgment.

From the pleadings it appears that petitioner is in custody by virtue of a warrant issued by the judge of

the municipal court of the city of Jacksonville, upon a charge supported by affidavit that petitioner on November 16, 1899, in said city, "did engage in business as a dealer in spirituous, vinous and malt liquors without having first obtained from the city of Jacksonville a license therefor, contrary to" a certain ordinance of the city. Copies of the affidavit, warrant and ordinance are made parts of the return. The demurrer to the return questions the validity of the ordinance upon certain specified grounds hereinafter more specifically referred to.

The assignments of error are to the effect that the court erred in overruling the demurrer, in not discharging petitioner upon the return, and in remanding him to custody.

The first section of the ordinance provides that from and after October 1, 1899, every person, firm, corporation or association engaged in or managing any business, profession or occupation and having a fixed place of business in the city or required to have a city license shall on or before October 1, 1899, and annually thereafter, and always before engaging in any business, profession or occupation, register in a book to be kept for that purpose by the city recorder, their names, professions or occupations, and their places of business, and that no person, firm, corporation or association shall engage in or manage any such business, profession or occupation until after having been so registered in the office of the city recorder.

The second section provides that from and after the first day of October, 1899, no person shall engage in or manage the business, profession, occupation or occupations thereinafter mentioned and required to be licensed by the city, without first having paid the amount of

license tax required therefor to the city treasurer for the use of the city and obtained a city license therefor, and that the license shall be made out by the recorder on production of the treasurer's receipt for the amount, which receipt shall be countersigned by the comptroller.

Section 4 provides that no person, firm, corporation or association shall engage in or manage any business, profession or occupation in this section mentioned without first obtaining from the city a license therefor, and the assessments of such taxes are hereby fixed as follows. Here follows quite an extensive list of professions, occupations and businesses arranged alphabetically, with the amount of license tax imposed thereon, among which is the following: "Liquors, dealers in spirituous vinous or malt liquors for each place of business $275."

The fifth section provides "that any person violating any provision of this ordinance shall upon conviction be punished by a fine not exceeding, $500, or imprisoned not exceeding ninety days."

1. It is urged that the city's charter confers no power upon it to require the registration provided for in section 1 of the ordinance, and that as the entire ordinance is designed as a complete system of raising revenue by taxing all or nearly all of the occupations engaged in within the city, if any part is invalid, the whole must fall with it. In City of Jacksonville v. Ledwith, 26 Fla. 163, text 212, 7 South. Rep. 885, it is said that if all the provisions of an ordinance are connected in subject-matter depending upon each other operating together for the same purpose, or otherwise so connected together in meaning that it can not be presumed that the legislative power of the city would have passed the one without the other, the whole ordinance will be de-

clared void.   On the other hand, where some parts are not connected with or dependent upon others, as where the ordinance attempts to accomplish two or more independent objects, it may be void in part and valid as to the residue.   If its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portions.   If the valid and the void parts "are so mutually connected with and dependent on each other as conditions, considerations or compensations for each other as to warrant the belief that the city legislative power intended them as a whole and if all could not be carried into effect it would not pass the residue independently, then if some parts are beyond the power to enact, all the provisions which are thus dependent, conditional or connected must fall with them."   Plaintiff in error is not charged with a violation of this section of the ordinance, but with a violation of a subsequent section.   It is not necessary for us to decide whether the city had power to enact the first section, for, admitting that it had not that power, the invalidity of that section would not, under the rule stated in the Ledwith case *supra*, affect the validity of the remainder of the ordinance.

2.  It is also urged that the city has no power to enact a license tax ordinance to remain in force until repealed, but that it must each year pass a new ordinance upon the subject, levying a specific occupational tax for that year.   In several sections of the charter such expressions as the "annual levy of taxes," or the levy for the "current" or "ensuing year," and "levy in any year," are used, but the connection in which these expressions are used shows that they relate to taxes upon property, and not license taxes, and we have not

33

been referred to any provision of law which either expressly or by implication forbids the passage of an ordinance levying license taxes, to remain in force until repealed in some manner provided for by law. If the city has power to pass an ordinance, and there is nothing in the nature of the subject-matter or charter act, or the ordinance itself, which limits the operation of the ordinance to a definite period, it necessarily remains in force until repealed by the same power that enacted it or superseded by some superior authority.

3. It is further insisted that this ordinance imposes taxes upon occupations not taxed, as well as upon others taxed, by the State; that the city has no power to impose the one, and in imposing the other the amounts of its license taxes must not exceed 50 *per cent.* of the State tax. If this latter contention is correct, then the tax imposed upon dealers in spirituous, vinous and malt liquors is invalid because it exceeds 50 *per cent.* of the State tax upon the same privilege. To determine these questions it will be necessary to refer to several special acts relating to the city and the general revenue laws of the State. The charter of Jacksonville (Chap. 3775, laws of 1887,) provides, among other things, in Section 4, Article 3: "The mayor and city council shall, within the limitations of this act, have power by ordinances to levy and collect taxes upon all property and privileges taxable by law for State purposes, * * *. to license, tax and regulate auctioneers, taverns, peddlers and retailers of liquors, and all other privileges taxable by the State." By Section 11, Chap. 3953, laws of 1889, Section 1, Article 12, of the charter was amended to read: "All property which is subject to State taxes shall be assessed and listed for taxation alphabetically for the entire city, without reference to wards. The

assessment shall be made by the comptroller and his assistants and the valuation of real and personal property shall be subject to be increased or diminished by the council under regulations to be made by ordinance. Privileges may be licensed and taxed by city ordinances. The council may provide for licensing the keeping of dogs," &c. By Section 1, Chap. 4300, laws of 1893, an act relating to the city of Jacksonville, it is provided that "all property which is subject to State taxes shall be assessed and listed alphabetically for the entire city in the name of the owner whenever the name of such owner is known to the assessing officer, or when the property has been returned as herein provided. Property, the owners of which are unknown and have failed to return as herein provided, shall be assessed and listed according to lots and blocks of the several tracts or plats of land within the city. All property shall be assessed as of the first day of January of the year for which such assessment is made. Privileges may be licensed and taxed and the amounts of such taxes shall be fixed by city ordinances. The council may provide for licensing the keeping of dogs," &c. It seems quite clear that under our former decisions (City of Jacksonville v. Ledwith, 26 Fla. 163, 7 South. Rep. 885; *Ex parte* Simms, 40 Fla. 432, 25 South. Rep. 280,) the provisions of the charter and special acts relating to the power and manner of levying license taxes by the city of Jacksonville do not confer upon that city the power to select the subjects of occupational taxes for raising revenue, or to tax occupations not specifically mentioned in the charter and not taxed by the State; but, on the contrary, such provisions confine the city to those occupations and privileges specially mentioned in the charter or specifically taxed by the State. On the other

hand it would seem to be equally clear that the power expressly given in Section 4, Article 3 of the charter, that "The mayor and city council shall, within the limitations of this act, have power by ordinances to levy and collect taxes upon all property and privileges taxable by law for State purposes, to license, tax and regulate auctioneers, taverns, peddlers and retailers of liquors, and all other privileges taxable by the State," carries with it the implied power to fix the amount of tax to be paid for the license which it is authorized to require. There is nothing in the charter and special acts which limits this implied power to determine and fix the amount of tax for licenses which the city is expressly authorized to require, but the ninth section of the general revenue act of 1887 (Chap. 3681), passed at the same session with the charter act did limit the amount to 50 *per cent.* of the State tax. Section 9 of the general revenue act of 1887 was amended by Chap. 3847, laws of 1889, but the limitation was continued, and the like limitation was again brought forward in the general revenue act of 1891 (Chap. 4010). The general revenue act of 1893 (Chap. 4115) brought forward this same limitation with other provisions which we quote. Section 9, which levied State license taxes upon a large number of businesses, professions and occupations specifically mentioned, provided that "Counties and incorporated cities and towns may impose such further taxes of the same kind upon the same subjects as they may deem proper when the business, profession or occupation shall be engaged in within such county, city or town. The tax imposed by such city, town or county shall not exceed fifty *per cent.* of the State tax. But such city, town or county may impose taxes on any business, profession or occupation not mentioned in

this section, when engaged in or managed within such city, town or county." Under this last clause Jacksonville, as well as all other cities and towns, was given express power to impose license taxes upon any business, profession or occupation engaged in or managed within such city that was not taxed by the State, and this power carried with it the implied power to fix the amounts to be charged therefor, but as to all other license taxes upon subjects taxed by the State, the limitation of 50 *per cent.* of the State tax still applied unless there was something else in the statute which removed it. And it seems to us clear that the 50 *per cent.* limitation in this general revenue law was not intended to apply to the city of Jacksonville, because of the further provision in Section 57 of the same act, that "nothing in this act shall be construed as in any way abridging or limiting powers to assess, levy or collect taxes, licenses or assessments which have been or may be granted to any municipal corporation by special act or charter act." As we have seen, without the limitation contained in the general revenue act, the city would have power under its charter to fix the amount of its license taxes upon privileges without reference to the amount of the State tax, and the language quoted from Section 57 of the revenue law of 1893 clearly shows that the legislature did not, by anything contained in that act, intend to limit or abridge any powers to assess, levy or collect taxes or licenses which had been granted to any municipal corporation by charter act or special act. The identical provisions quoted from the revenue law of 1893 are carried forward in Sections 9 and 56 of the general revenue law of 1895 (Chap. 4322), and are now in force. We are of opinion, therefore, that the city of Jacksonville has express power to tax any business,

profession or occupation engaged in or carried on within the city, whether taxed by the State or not, and the further implied power to fix the amounts to be charged therefor for purposes of revenue, and without regard to the amount of State tax upon the same subjects. Doggett v. Walter, 15 Fla. 355. It is not contended here that the taxes imposed by this ordinance are prohibitive or unreasonable or discriminative, or that the taxes imposed are not needed by the city for legitimate purposes. The question here raised goes only to the power of the city to tax all occupations, businesses and professions carried on within the city, whether taxed by the State or not, and to fix the amounts of such taxes without reference to any license tax imposed by the State, and we hold that such power exists.

4. It is contended that the city has by this ordinance attempted to "segregate the several elements of right that accrue to the citizen under one taxable privilege as recognized, defined and declared by the general statute law of the State and to tax each of such elements, as a separate and distinct privilege of its own creation," by dividing several privileges into many and requiring separate licenses to sell special articles which necessarily belong to one State privilege, and which the State permits to be sold under one license, in violation of the rule declared in the Simms case *supra*. The defendant in error denies that the ordinance violates the rule stated, and contends further that even if it does, the ordinance is valid, because as he insists that rule applies only to license taxes upon dealers in spirituous, vinous and malt liquors, and has no application to other privileges or occupations licensed and taxed by the State. The rule stated in the Simms case is not confined to dealers in spirituous, vinous and malt liquors, but ap-

plies to each and every privilege taxed by the State, but as counsel has not pointed out any specific instance wherein the rule is violated by this ordinance, and it does not appear that the tax imposed upon the business or occupation of plaintiff in error, contravenes that rule, we do not feel called upon to enter into a critical examination of the entire ordinance with a view to ascertain if the rule has been departed from with respect to other privileges taxed by the State and attempted to be licensed and taxed by this ordinance.

5. It is contended, lastly, that the legislature can not constitutionally delegate to the city the right to select the occupations upon which it shall impose a license tax for municipal purposes, nor the right to fix the amount of such tax as it may see fit, but that the legislature must designate the occupations to be taxed and fix a specific limitation upon the amount of taxes which the city may be empowered to impose as license taxes. This question depends upon the proper construction of Section 5, Article IX, of Constitution of 1885, which reads: "The legislature shall authorize the several counties and incorporated cities or towns in the State to assess and impose taxes for county and municipal purposes, and for no other purposes, and all property shall be taxed upon the principles established for State taxation. But the cities and incorporated towns shall make their own assessments for municipal purposes upon the property within their limits. The legislature may also provide for levying a special capitation tax on licenses. But the capitation tax shall not exceed one dollar a year and shall be applied exclusively to common school purposes." The argument for plaintiff in error runs thus: In this section the purpose first expressed is that the legislature shall *authorize* cities

and towns to impose taxes; another purpose is to empower cities and towns by 'that instrument to make their own assessments upon property within their limits, but upon the subject of license taxes the purpose is not to permit the legislature to *authorize* cities and towns to levy taxes or licenses, but to empower it to *provide for levying such a tax itself*; that this clause relating to licenses is a grant of power to the legislature which can not be delegated, and that authorizing cities and towns to select the subjects of occupational tax for municipal purposes and to fix the amounts to be paid for licenses is delegating a power which the constitution requires to be exercised by the legislature. It will be observed that the clause under consideration does not require that the legislature levy the tax, but authorizes it to *provide* for levying such taxes. As the constitution does not designate any particular manner in which this tax shall be levied, or in which it shall be authorized to be levied, or indicate the nature of the provision to be made by the legislature on that subject, or place any limitations upon the power of the legislature in respect to taxes upon licenses other than that it may "provide for" levying such tax, it would seem to leave it discretionary with the legislature to "provide for" levying the tax in any manner deemed by it appropriate, which would not conflict with other provisions of the constitution. County Commissioners of Lake County v. State *ex rel.*, 24 Fla. 263, 4 South. Rep. 795. It can not be said that the legislature has not provided for levying a municipal tax upon licenses when it has expressly granted power to the cities and towns to levy license taxes for municipal purposes upon any business, profession or occupation carried on within such cities or towns, leaving the amount to be levied discretionary with them.

There is nothing in the words "provide for levying" or in any other part of the constitution, which we can construe to mean that the legislature shall not delegate this taxing power to cities and towns for municipal purposes, or that if it does delegate such power it must specifically designate the occupations to be taxed and the maximum amount of license tax to be required by such city or town. And while as a general rule the legislature can not delegate its power to tax, yet it is generally held that in the absence of specific constitutional prohibition there is no impropriety in delegating the power to tax persons, property or licenses for municipal purposes to cities and towns. 2 Dillon on Municipal Corporations, §§739, 793; Cooley on Taxation, p. 63. And it is competent for the legislature to authorize municipal corporations to tax occupations and privileges not taxed by the State. Cooley on Taxation, 64, 65; *Ex parte* City Council of Montgomery, *in re.* Knox, 64 Ala. 463; Johnson v. The Mayor and Council of the City of Macon, 62 Ga. 645; Hirshfield v. City of Dallas, 29 Tex. App. 242, 15 S. W. Rep. 124. There is not only nothing in the constitution which forbids the legislature from delegating the power to levy taxes upon licenses for municipal purposes, but that power is expressly granted in the clause, "the legislature shall authorize the several counties and incorporated cities and towns in the State to assess and impose taxes for county and municipal purposes and for no other purposes," and the limitation upon that power is found in the words: "and for no other purposes." There are unquestionably strong reasons why the legislature should in all cases designate the occupations to be taxed by cities and towns, and place a limit upon the amounts of such taxes, but we have been unable, after a very

careful consideration of the question, to read that meaning in the words "provide for," or any other expression found in the constitution. Ogden City v. Crossman, 17 Utah, 66, 53 Pac. Rep. 985; Wiggins v. City of Chicago, 68 Ill. 372; County of El Dorado v. Meiss, 100 Cal. 268, 34 Pac. Rep. 716; City of New York v. Chicago, B. & Q. R. Co., 56 Neb. 572, 76 N. W. Rep. 1065.

The judgment of the Circuit Court is affirmed.