## W. S. LUM *v.* THE CITY OF VICKSBURG.

1. CONSTITUTION 1890, §§ 80, 88. *Prospective municipalities.* Code 1892, § 3035. *Constitutionality.*

   Sections 80, 88, constitution 1890, among other things providing for general laws to create and govern municipal corporations, are prospective in operation, and do not repeal existing municipal charters. Therefore, § 3035, code 1892, recognizing the continued existence of such charters, is not unconstitutional.

2. CONSTITUTIONAL LAW. *Code* 1892, § 3035. *Validity. Municipalities.*

   It is within the legislative power to enact a law to become operative upon the happening of a future event. Section 3035, code 1892, providing that existing municipalities, by resolution of the authorities, may elect not to come under the operation of the code chapter relating to such corporations, is constitutional.

3. TAXATION. *Valuation of property. Notice. Municipalities.*

   Under the charter of Vicksburg, providing that notice of the asses-

sor's report of undervaluations of property shall be given to the owners before consideration of the report, only such notice, fair as to time, as the municipal authorities may fix, is required. A written notice given by the clerk to the owner June 9, requiring him to appear before the board July 5, is sufficient.

4. CORPORATE SEAL. *Absence of.   Notice not invalidated.*

Failure to affix the corporate seal does not affect the validity of the notice.

5. MUNICIPAL AUTHORITIES. *Action of.   Adjournment over.   Taxation.*

Under a provision authorizing the board of mayor and aldermen to hold special meetings, and, at any meeting, to adjourn from time to time, it is not irregular, when notice is given that the report of undervaluations in assessments will be considered at a certain time named in the notice, to refer the matter to the finance committee of the board at that time, and adjourn to a later day, and then act on the report of the committee. After notice given, the owner is deemed to be present and aware of the adjournment over, and he is bound by what is done.

FROM the chancery court of Warren county.

HON. CLAUDE PINTARD, Chancellor.

In 1894 certain real estate of appellant, Lum, in the city of Vicksburg, was given in by him to the city assessor for taxes. On June 4 the assessor reported to the board of mayor and aldermen certain property as being undervalued, including the property of Lum. The board, being then in session, ordered the city clerk to notify the property holders that it would meet July 5 to consider the report. On the day named the board met and considered the report as to certain parties, not including Lum, and, as to others, referred the matter to the finance committee, with instructions to consider and report on July 12. On that day the board met and considered the report of the committee, and, by a general order, adopted the same. The effect of this was to raise the valuation of Lum's property, in accordance with the recommendation of the assessor. Thereafter this bill was filed by him to enjoin the collection of the taxes on his property to the amount of the excess in valuation

above what he gave it in for.   The bill was answered, and the defendant made a motion to dissolve the injunction on pleadings and proof, which was sustained, and a decree was entered against complainant and his sureties on the injunction bond for the amount of unpaid taxes, with ten per cent. damages.

It was agreed as a part of the record that, on June 1, 1892, the mayor and aldermen of Vicksburg, by resolution duly entered upon the minutes of the corporation, elected not to come under the provisions of chapter 93, code 1892, and that this was certified to the secretary of state.   Said chapter went into effect April 1, 1892, and contains general provisions applicable to municipal corporations.   Section 3035 therein provides that, from the date it becomes operative, every municipality in the state shall be governed by the provisions thereof.   "But an existing municipality, by resolution of its corporate authorities, entered of record and certified to the secretary of state within twelve months after this chapter becomes operative, may elect not to come under the provisions hereof."   The section further provides that the chapter shall not apply to a municipality so signifying the wish of its corporate authorities, unless, by a majority vote of the electors therein, it determines to come under the operation of the chapter.

The opinion contains such further statement of the facts as is necessary to an understanding of the questions decided.

*McLaurin & McLaurin*, for appellant.

1. The action of the authorities is illegal, because the board failed to name the kind of notice and the length of time that it should be given, as required by § 30 of the city charter. The time for considering the report of undervaluations was fixed, and the clerk was ordered simply to notify the property owners that the board would meet at that time to hear objections.   In *Railway Co.* v. *Brennan*, 69 Miss., 103, in discussing this section of the city charter, the court says that it confers the power to determine the taxable value of property—a

tremendous and dangerous power—and that there is need of observance with scrupulous exactness of the few safeguards of the property owners.  The notice here was wholly insufficient. The clerk issued what purports to be a summons, but what right did he have to assume that the notice served on the ninth of June to compel property holders to appear July 5 would be sufficient?   How did he know but that a newspaper publication or posting of notices would be proper?

2. The action of the board was illegal, because it received the report on one day and acted on another, while § 30 of the charter provides that it shall be received and considered at the same time.   If this is not the correct construction, then there should at least be notice to the property holders that the report of the assessor is to be received.   The reported undervaluation was presented to and received by the board June 4, and was considered July 12.   Our contention is, that the report should have been received and considered at the same time.   This is manifest from a grammatical construction of said section.

3. The notice in this case was insufficient and void, because it was not issued under the seal of the corporation.   When the board met to consider the report of the city assessor it was acting in a judicial capacity, and appellant was a party defendant to proceedings before it.   In such case, without legal summons, the board acquired no jurisdiction.   111 U. S., 17; *Griffin* v. *Mixon*, 38 Miss., 424; *Coulson* v. *Harris*, 43 *Ib.*, 728.

Under the common law, which is in force, the process of a court without its seal is void.   20 Law. Rep. Ann., 424; 3 Smed. & M., 87; *Dogan* v. *Brown*, 44 Miss., 235.

4. The action of the board is void, because the record shows that no particular time for the receipt of the report of under-valuations, to be made by the assessor, had been provided for, as was expressly required by § 30 of the charter.   *Railway Co.* v. *Brennan, supra.*

5. The action is illegal, because the record shows the board did not act on the report of the assessor at the time provided

by the order of the board, July 5, but referred the report to a committee, and, on July 12, adopted the report of this committee as to the property considered by it, and by general order of that date raised the assessment of appellant without having previously considered it, or without notice that the valuation would be considered on that day. The board had no right to refer this matter to the finance committee. The question of assessment must be considered by the board as a body, at a time and place to be definitely fixed. This was not done in the present instance, and appellant had the right to enjoin the collection of the tax illegally imposed. *Ball* v. *Meridian*, 67 Miss., 91.

6. The court erred in decreeing ten per cent. damages on dissolution of the injunction. There had been no seizure or sale, and damages were not allowable. But we submit that the injunction should have been perpetuated.

*J. M. Gibson*, on the same side.

In view of §§ 80, 87, 88, constitution 1890, it is submitted that § 3035, code 1892, is unconstitutional. No special charter could have been granted to Vicksburg by express act of the legislature of 1892, and, therefore, the legislature could not delegate to municipal authorities power to adopt a charter.

Again, could the legislature delegate to corporate authorities the power to repeal a statute or enact a law without the vote of the citizens of the municipality? Under some constitutions, a local law may be made to depend upon the vote of the people of the locality, but under our constitution this cannot be done, because the people have, without reserve, delegated to the legislature the discretion to act in such cases. The constitution provides that the legislature shall pass general laws, under which cities may be chartered and their charters amended. Even if the legislature could make a law depend for its existence upon the happening of an event, it cannot refer the right of selection of one of several laws to corporate authorities. Cooley on Con. Lim., §§ 117, 123; 3 Am. & Eng. Enc. L., pp.

698, 701, and authorities cited; *Ex parte Wall*, 48 Cal., 279. The section of the code in question undertakes to permit the corporate authorities, without approval of the governor, to repeal chapter 93 of the code, by electing not to come under its provisions.

Accepting the construction announced in *Jackson* v. *Schlomberg*, 70 Miss., 47, and *State* v. *Govan*, *Ib.*, 535, that if the corporate authorities took no action within twelve months, chapter 93 of the code went into effect, does it not follow that by mere nonaction, or by simple resolution, the corporate authorities re-enacted the provisions of the old charter and repealed the code chapter prescribing the mode and manner of assessments for municipal purposes? These constitutional questions were not presented in the cases cited. Clearly, the whole scheme of the constitution for correcting the abuses growing out of special legislation would, as to municipalities, be defeated by sustaining § 3035 of the code.

There are other reasons, presented by associate counsel, why the decree in this case should be reversed. But, as the constitutional question involves a matter of special interest and grave concern, we have restricted our argument to that.

*Booth & Anderson*, for appellee.

1. The decree in this case comes clearly within the rules announced by this court in *Railway Co.* v. *Brennan*, 69 Miss., 103. Every step taken by the authorities was in pursuance of the city charter, and the appellant has no right to complain.

2. We will not discuss the question urged by counsel as to the constitutionality of § 3035, code 1892. It is very clear that the section is constitutional.

WOODS, J., delivered the opinion of the court.

Sections 80 and 88 of the present constitution are so clearly prospective in their operation as to make unnecessary any discussion touching the supposed unconstitutionality of § 3035,

code 1892. The sections of the constitution named, by their terms plainly show that no repeal of existing municipal charters was intended. Section 80 contains a direction to the legislature to provide, by general laws, for the prevention of abuses by municipal corporations of their powers of assessment, taxation, borrowing money and contracting debts; and § 88 is merely a direction to the legislature to pass general laws, under which local and private interests shall be provided for and protected, and under which cities and towns may be chartered and their charters may be amended, and under which corporations may be created, organized and their acts of incorporation altered. *Ex vi termini*, the language of both sections excludes all idea of any constitutional or compulsory legislative repeal of their existing municipal charters. By the first section named (80), future legislatures are directed to prevent abuses of charter rights by municipal corporations, and by the second section named (88), legislatures, for the future, are directed to provide general laws under which cities and towns may be chartered and their charters may be amended.

As to the other contention touching the supposed unconstitutionality of § 3035, code 1892—viz., that the power to legislate was conferred on the municipal authorities of Vicksburg by that portion of § 3035, code 1892, which left any existing municipality, in the mode and within the time prescribed by the section, to elect to continue its existence under its then charter, or, more exactly, not to come under the provisions of the general law of which said § 3035 was a part—we have to say that a law may become operative upon the happening of a future event, although that contingency may be the result of an election by the people, and that this is too well settled, generally, and in this state particularly, to be now again considered by us.

It is, furthermore, contended with great earnestness by counsel for appellant that, in several particulars pointed out in their brief, there was a failure of the municipal authorities, in its

action in dealing with the assessment of appellant's property, to observe the terms of its charter rights as defined in § 30 of the act of incorporation of the city of Vicksburg. It is asserted by counsel that the record shows on its face that, though § 30 of the charter requires the report of the assessor of undervaluations of property, by owners thereof, to be made at a time to be prescribed by the municipal authorities, no particular time for the reception of such report had been prescribed. It might be sufficient to say, in answer, that the pleadings and proofs make no reference to such issue. But, that there was a particular time prescribed by the municipality for the reception of the report of undervaluations made by the assessor, is plainly inferable from the averment of the original bill of appellant that, "for the purpose of receiving said report" the board of mayor and aldermen met on June 4, 1894.

The absence of the seal of the municipality from the notice given appellant of the time of the contemplated consideration of the report of the assessor as to the undervaluation of his property by appellant, was immaterial. The purposed action of the municipal authorities was not to be had in a suit to which appellant was a party; and, if it had been, the failure of the clerk to affix his seal or to sign his name, would have been an irregularity amendable on motion. But it was not a suit in which the appellant was required to be summoned. The board of mayor and aldermen were to sit to revise and adopt the assessment roll, and the charter only required that such notice as the board might fix should be given. Of course, ample notice, and fair as to time, is necessarily implied, and such notice appellant had, as abundantly appears from the order of the board to its clerk, directing him to notify persons whose property had been reported as undervalued, of the meeting to be held on July 5, to consider the assessor's report and to hear objections thereto, and from the full and explicit notice actually given the appellant on June 9.

It is urged, further, along this line of exception to the legality

of the board's action, that there· was not strict compliance by the board with one of the property owners' safeguards against municipal misrule, in that § 30 of the charter provides, amongst many other things, that "the reports of the assessor and collector shall be received and considered by the board at such time and upon such notice to the owners of the property as the board may fix," etc., and that the board proceeded in disregard of this requirement of their charter. As to failure to fix a time for receiving the assessor's report of undervaluations, we recur to what has been already said by us on this point. The bill does not aver that the board had not fixed the day for receiving the report, and the bill, in its averment that the board met June 4 for the purpose of receiving the report, suggests that the day had been fixed. But, on the other and remaining branch of this contention, we say the report of the assessor as to appellant's undervaluation of his property as given by him to the assessor, was considered at such time and upon such notice to appellant as the board did actually fix. · The notice given appellant was full and precise, and the time was placed one month distant—namely, July 5—and the notice given appellant in person on June 9.

It is insisted, however,· that the time fixed was July 5, and that the board finally considered and acted upon the assessor's report on July 12, seven days after the time fixed by the resolution of the board and its notice to appellant. A brief reference to the record in the case and to § 23 of the charter will disclose the unsoundness of appellant's position. On July 5 the board met pursuant to its resolution and the notice given appellant. Many property owners appeared and filed their objections to the assessor's recommendations to raise their assessments, but appellant was not of the number, and it is proper here to say that he did not appear before the board at all, or pay any attention whatever to the notice given him. At the meeting July 5 the board read the petitions of property owners who protested against raising their assessments, and heard the

objections of the several parties, and, in certain named cases, sustained the objections of protesting taxpayers and reduced the assessments as raised by the assessor.    As to the other petitions against adopting the assessor's recommendations, the record shows that the board, not being fully advised, referred these petitions to the finance committee of the board, with instructions to examine into the justice of the claims of the petitioning taxpayers, and report to the board at an adjourned meeting to be held on July 12.    It further appears from the record that the board met July 12, heard and considered and acted upon the report of its finance committee, making reductions in some cases and refusing to make reductions in others, and, by resolution, approved the assessment roll as presented by the assessor and collector, altered, of course, in the cases hereinbefore indicated, and the assessor and collector was ordered to make up the assessment roll from the lists so revised and passed upon by the board.    When we look to § 23 of the charter, we find that the action just narrated was in pursuance of the powers conferred thereby.    This section, beginning in its sixth line, declares, "the mayor or any five aldermen may call a special meeting of the board at any time, and any regular or special meeting may be adjourned from time to time by the board.    The mayor shall appoint all regular or special committees of the board, but no committee shall be vested with plenary power over any subject that may be submitted to it, but all matters so referred shall be reported back to the board for confirmation or final action."    The action was not irregular, then, in adjourning from July 5 to July 12, and in then finally adopting the assessment roll as revised.    The appellant was in court by regular and valid notice, and he was, in legal contemplation, aware of the adjournment from the fifth to the twelfth, and, as he filed no objection to the raising of his assessment, he is in no attitude to be heard to complain.

Under § 484, code 1892, upon dissolution of an injunction restraining the collection of taxes, the state, county or munici-

pality, as the case may be, shall have a decree for the amount of taxes enjoined, and ten per centum thereon, with all costs. The learned chancellor reached the proper conclusion, but, inadvertently, no doubt, referred, as his authority for allowing the ten per cent. damages to the municipality, to § 37 of the city charter, instead of the section of the code just named.

*Affirmed.*