## YAZOO CITY v. HENRY B. LIGHTCAP.

1. CONSTITUTIONAL LAW. *Municipal charters.* *Constitution* 1890, *sec.* 88.
   Constitution 1890, sec. 88, providing that the legislature shall pass general laws under which cities and towns may be chartered and their charters amended, merely requires the passage of uniform general laws prescribing the mode by which such charters may be granted and amended, and does not require that such laws shall contain the entire contents of charters and amendments.

2. SAME. *Code* 1892, § 3039. *Laws* 1900, *p.* 79, *ch.* 69.
   Code 1892, § 3039, as amended, laws 1900, p. 79, ch. 69, authorizing the amendment of the charters of municipalities which have not adopted the code chapter on "municipalities," and allowing amendments inconsistent with said code chapter, is not violative of constitution 1890, sec. 88, requiring the passage of general laws under which cities and towns may be chartered and their charters amended.

3. SAME.  *Delegation of legislative power.*

    Laws 1900, p. 79, ch. 69, amending code 1892, § 3039, so as to authorize amendments to charters of municipalities not operating under the code chapter on "municipalities" is not unconstitutional as delegating the exercise of legislative power.

4. MUNICIPAL BONDS.  *Election.*  *Joint purposes.*  *Code* 1892, §§ 3014, 3016, 3017.

    A municipality may order an election under code 1892, § 3014, *et seq.*, submitting to the voters as a single proposition the issuance of bonds for two or more purposes.

FROM the chancery court of Yazoo county.

HON. HENRY C. CONN, Chancellor.

Lightcap, the appellee, was complainant in the court below, and Yazoo City, appellant, was defendant there. The object of the suit was to enjoin the issuance of municipal bonds. From a decree in complainant's favor the defendant appealed to the supreme court.

The city of Yazoo had a charter granted it before the code chapter on "Municipalities" (code 1892) was adopted, and did not come under that chapter. It amended its charter in 1901 and 1902, in pursuance of section 3039 of the code of 1892, and the amendment thereof in 1900 (acts 1900, p. 79, ch. 69). These amendments to the charter consisted in the adoption of sections 3014, 3015, 3016 and 3017 of the code, except the restrictive clause of section 3014, as to the amount of indebtedness it might incur. Under these amendments it proceeded to issue bonds for proper municipal purposes, when Lightcap filed a bill in the chancery court, enjoining it from so doing. The ground alleged in the bill is that the amendments were illegal and ineffectual, because section 3039 of the code, and the act of 1900 amending it, are unconstitutional and void. The bill admits that the charter was amended in strict compliance with the statute, and that the proceedings for the bond issue was in exact conformity to the charter as amended, except that complaint is made that there is no separation of the purpose for which the bonds were to be issued. This bill

admits that the amount of bonds proposed to be issued is below the limit prescribed by section 3014.

*J. A. P. Campbell,* for appellant.[*]

Yazoo City had a charter granted by the legislature in 1884. That was before the provision for chartering municipalities otherwise than by act of legislature in each case, which was made by the code of 1892. Yazoo City did not come under the municipal chapter of that code, and, in 1901 and 1902, it amended its charter, in pursuance of section 3039 of the code, and the amendment of that section in 1900 (acts 1900, p. 79, ch. 69), by adopting as part of its charter sections 3014-3017 of the code, except the restrictive clause of section 3014 as to the amount of indebtedness it. might incur. Having amended its charter, it proceeded to issue bonds for proper municipal purposes, when it was enjoined by the appellee on the ground that the amendment of its charter was illegal and ineffective, because section 3039 of the code and the act of 1900 amending it are unconstitutional and void. The bill admits that the charter was amended in strict conformity to these statutes, and that the procedure for the issuance of the bonds was in exact conformity to the amended charter, except that some complaint is made of a want of separation of the purposes for which the bonds were to be issued. While the restriction of section 3014 of the code as to the amount of indebtedness the city may incur was not included in the amendment, the bill admits that the amount of bonds proposed to be now issued is below the limit prescribed by that section. It is thus seen that the question presented by the bill, which was demurred to by Yazoo City, is as to the constitutionality of section 3039 of the code and its amendment by act of March 12, 1900 (acts 1900, p. 79, ch. 69). By section 3039, then existing municipalities, which did not come under the chapter of which the section is a part, were authorized to amend their

[*] The briefs in this case are published in full by order of the court.

charter, as it provides, consistently with the constitution and laws of the United States and this state, including the chapter of which section 3039 is the last. By it any amendment was required to consist with that code chapter. By the amendment of March 12, 1900, the amendment of its charter by a municipality need not consist with chapter 93 of the code, and is not expressly required to conform to the laws of the state, other than chapter 93 of the code, but that is probably implied. But no question of that sort is here involved, since the amendment of its charter by Yazoo City was not inconsistent with any law of the state. Indeed, the amendment of the charter of Yazoo City was not inconsistent with chapter 93 of the code, but consistent with it. The restrictive part of section 3014 was not embraced in the amendment, but the restriction was not disregarded in issuing the bonds. As the action of Yazoo City, which is assailed by this bill, is not inconsistent with chapter 93 of the code, but in strict conformity to it, as to issuance of bonds, the case may be said to rest on section 3039 of the code, independently of the amendatory act of March 12, 1900, if there is any constitutional objection to the latter which does not apply to the former, though I do not think there is. The bill avers that neither section 3039 of the code, nor the amendatory act of 1900, was referred to the committee on local and private legislation. A reference to section 89 of the constitution, with reference to which this averment is made, will at once show the frivolous nature of this assailment of these laws, which bear no resemblance to the local and private legislation contemplated by it. The real ground of the attack on section 3039 of the code and its amendment is that it was not competent for the legislature to confer on local agencies (municipalities) the power to amend their charters; that this is a delegation of legislative power, which can be exercised by the legislature alone, and cannot be delegated.

There has been a vast amount of judicial discussion on the subject, and nowhere an abler one than in *Alcorn* v. *Hamer,*

38 Miss., 652, where may be found all that is worth reading on the subject, taking the arguments of counsel and opinion of the court. There is no dispute of the general proposition that all legislative power is vested in the legislature, and that it cannot abdicate its appropriate function, but it is equally true that the grant to the legislature of full legislative power includes the power of committing to local agencies the power to do for the legislature what it might do. Cooley says: "The maxim that legislative power must not be delegated is to be understood in the light of the immemorial practice of this country and England, which has always recognized the policy and propriety of vesting in the municipal organization certain powers of local regulation, in respect to which the parties immediately interested may fairly be supposed more competent to judge of their needs than central authority." Cooley, Const. Lim., p. 140, note 118. Again he says: "The right of the legislature, in the entire absence of authorization or prohibition, to create towns, etc., and confer on them the right of local government, and especially of local taxation and police regulations usual with such corporations, would always pass unchallenged." *Ib.,* pp. 228, 229, note 191. Thompson on Corporations, Vol. 1, sec. 36, says: "In the absence of constitutional restraints, no reason is perceived for holding that the legislature cannot delegate to subordinate agencies the power of creating corporations, prescribing the manner in which the power shall be exercised." I could multiply citations and quotations to the same effect, but it is needless.

Constitutions are framed with full view of existing systems and prevailing conditions, and are to be interpreted accordingly. In all the states of the United States, one of the most prominent features of government is the practice of committing to local agencies the power of local government, and perhaps nowhere has this feature been more prominent and this practice more constant than in Mississippi. From an early day the practice has been, in this state, to delegate power as

to matters of local concern to those directly interested, and such exercise of power has always been sustained when questioned. *Williams* v. *Cammack,* 27 Miss., 221; 61 Am. Dec., 508; *Alcorn* v. *Hamer,* 38 Miss., 652; *Barnes* v. *Pike Co.,* 51 Miss., 305; *Schulherr* v. *Bordeaux,* 64 Miss., 59; 8 South., 201; *Lum* v. *Vicksburg,* 72 Miss., 950; 18 South, 476. Municipal and other corporations were created, or authorized, and armed with power to legislate as to their internal affairs and local concerns. Ordinances and bylaws are but legislative acts performed by authority conferred by the legislature. Every corporation must have power to legislate. That is essential to its existence. Every ordinance or bylaw is a law of a limited nature, but still a law; and, therefore, every law creating, or authorizing the creation of, a corporation, may be said to be a delegation by the legislature of power to legislate, but none is so reckless as to assert that such delegation by the legislature is unconstitutional. Consider the great number and variety of agencies, besides municipalities, existing in this state, and exercising the delegated power to effect the purpose of their organization.

The code of 1857, ch. 35, prepared, under the constitution of 1832, by three great lawyers, provided for the creation of corporations by act of the persons desiring incorporation, who were to prepare a charter drawn up on parchment or paper, to contain, among other things, "the powers to be exercised," and, upon its approval by the governor, it was to be effective. This includes cities and towns. There was no general incorporation act to be adopted, but the broad power was conferred to "state the powers to be exercised." In other words, the incorporators prepared the charter to suit themselves. The validity of that act was never questioned. It was re-enacted, with some change as to the corporations which might be formed under the constitution of 1869, and is contained in the codes of 1871 and 1880. It was enlarged and extended after the code of 1880, and was in full operation when the constitution of

1890 was adopted. The framers of the constitution of 1890, familiar with the previous history of legislation in the state, and existing conditions, adopted sections 87 and 88, giving the sanction of the sovereign will to the established practice of the state in the long past, and commanding its continuance and extension. Section 88 commands the enactment of general laws "under which cities and towns may be chartered and their charters amended." There is no indication of how this shall be done. That is left entirely to the legislature. Its discretion is unlimited as to the manner. It may be justly assumed that the framers of the constitution had in view the provisions of the code of 1857 and subsequent codes on the subject. Under the command of the constitution, there surely cannot be a doubt of the power of the legislature, in the exercise of its discretion in obeying, to determine how charters may be formed and amended. And, if the narrow view held by the chancellor—that only municipalities chartered under general laws are embraced in the language of the section—be correct, surely the emphatic command as to them may be regarded as at least a permit to the legislature to confer such power on all municipalities. It settled the policy of the state; gave the sanction of the sovereign will to the delegation of power to local bodies to adopt charters of their own preparation, and to change them. It would be absurd to have corporations able to adopt and amend their charters, and others of the same nature, without this right. No such purpose can be imputed to the framers of the constitution. The fundamental law is to be interpreted as outlining government—making a foundation to be built upon—and is not to be narrowly interpreted. There should be no sticking in the letter *"Qui haeret in litera, haeret in cortice."* It was competent for the legislature to merely follow the code of 1857 and subsequent codes as to how corporations should be created under general laws, and it did in the code of 1892, except that it adopted a chapter on "Municipalities," which, while entirely proper, was not necessary. As to other corpora-

tions, the code of 1892 followed former codes, and excluded railroad and insurance companies, for which other provision was made.   As to all other corporations, not municipal, the code of 1892, following former codes, confers power to state in the charter "the powers to be exercised," and power to amend is given.   It is just as much the right of the legislature to allow the incorporators of municipalities to frame charters, and state the powers to be exercised, as in case of other corporations. And in conferring power on municipalities to amend their charters, necessarily they are to frame the amendment.

There has been much nonsense about the inadmissibility of the legislature delegating power.   The courts invented the doctrine that, while a mere legislative proposition to make a law could not become one by the vote of the people, a complete legisative act might be made to operate, or not, as the people designated might say yea or nay in some prescribed way.   This, although the recognized doctrine, is a rather thin distinction, and really sprang from the necessity of practical legislation to carry out the American idea and practice of local government.   The maxim that legislative power cannot be delegated has been disregarded and violated universally, were it understood to prohibit delegation to corporations and localities of the power to act as to their internal affairs and local interests. Such a doctrine is revolutionary and destructive, and utterly inadmissible.   The municipal chapter of the code, including section 3039 and its amendments, would have been valid if the constitution of 1890 did not exist; and a *fortiori*, in view of that, is the validity of the legislation assailed beyond any question or doubt.   Therefore, the decree should be reversed and the bill dismissed.

The mention in the bill of the fact that the bonds were declared to be issued for the purpose of sewerage, waterworks, and electric lights, without giving voters opportunity to vote on the objects separately, seems to cut no figure in the case; and surely, since no law required separation, the town council

must be allowed the right to propose bonds for the allied objects, as was done. Any voter could vote against the proposition as a whole, and thus object to each part. Doubtless the town council was not willing to issue bonds for one of the improvements without including all, and hence the proposal.

*Henry & Barbour,* on same side.

This is a most important case, both in the amount and the principle involved. The corporation of Yazoo City declined to come under the provisions of chapter 93 of the code of 1892, known as the "Chapter on Municipalities," but preferred to remain under her own charter, and make such amendments thereto, under section 3039 of the code of 1892, and subsequent acts of the legislature, as she might deem wise and proper. It has been her desire for months to begin the erection of a modern, up to date waterworks, electric light, and sewerage system, but thus far every obstacle possible has prevented the consummation of this purpose, the same being placed by the owners, resident mainly in New York and Michigan, of the present inefficient, unhealthy, and broken-down waterworks plant, or, rather, an excuse for a plant. A determination of the question as to whether Yazoo City shall be permitted to put in waterworks, electric light, and sewerage system commensurate with the needs of the city, is now before this court for final adjudication.

The proposed issue of bonds has been attacked as absolutely void on the following grounds, to wit: (1) The amendments to the charter of Yazoo City, ordained November 15, 1901, and September 8, 1902, respectively, are not consistent with section 3039 of the code of 1892; but, if consistent, (2) section 3039 of said code is unconstitutional, and the act of the legislature of 1900, entitled "An act to amend section 3039 of the annotated code of 1892, with reference to amending charters of municipalities," approved March 12, 1900; p. 79, sec. 66, ch. 10, of the charter of Yazoo City, approved March

charter of Yazoo City purport to be enacted thereunder, and their validity cannot be sustained by either or both; (3) section 66, ch. 10, of the charter of Yazoo City, approved March 15, 1884 (laws 1884, p. 596, sec. 405), has been disregarded, and not observed in any particular, in providing for the sale and issuance of said bonds as proposed by said ordinance heretofore referred to; (4) if the proceedings of the board leading to the proposed sale of said bonds were otherwise legal and regular, said proposed sale is void, for the reason that the taxpayers and voters are not given the opportunity to either protest or vote against or for the issuance of said bonds for the several objects for which they are proposed to be issued—said proposed issue of bonds combining three separate and distinct objects, which should have been submitted separately.

It will be observed, in passing, that fundamental and well-recognized rules and requirements have not been observed in setting forth the reasons as to why section 3039 of the code is unconstitutional, and as to why the act of the legislature of 1900 amending said section is unconstitutional, the pleader failing to set forth with particularity in what respect it is unconstitutional and with what provisions of the constitution it is at conflict. *State* v. *Fourcade* (Ala.), 13 South., 187; 40 Am. St. Rep., 249; *In re Madera Irr. Dist.* (Cal.), 28 Pac., 272, 675; 14 L. R. A., 755; 27 Am. St. Rep., 106.

It is asserted, however that the amendments to the charter of Yazoo City, ordained November 15, 1901, and September 8, 1902, respectively, cannot stand the test, because they are not consistent with sec. 3039, ch. 69, p. 79, of the act of the legislature of 1900 amendatory thereto, are unconstitutional, and are, therefore, incapable of sustaining the foregoing charter amendments. Let us examine into this a little. We are free to admit that said amendments to the charter of Yazoo City are not consistent with section 3039 of the Code of 1892. Nor did the board have any special reason or desire to make them consistent with that particular section of the annotated

code. It was never contemplated that any amendment to any charter of any city, town or village, should be made consistent with section 3039; nor do we suppose our friends meant to put their objection just in this shape, but they meant to say that said amendments to the charter of Yazoo City were not consistent with certain parts of the municipal chapter of the code, to wit, sections 3014-3017. The only differences in the amendment of November 15, 1901, and section 3014 of the code are as follows: After the words "sewerage system" in the fifth line of section 3014 is inserted in the amendment the words "a street railway," which anyway would be included in the words "any other plant," in the fourth line of section 3014; also the provision of section 3014 with reference to the amount of bonds that may be issued is omitted under charter amendment of November 15th. The only difference between section 3015 of the code and the amendment of November 15th is that the rate of interest in section 3015 shall not exceed 7 per cent. per annum, while in the amendment of November 15th the interest shall not exceed 5 per cent. per annum. Section 3016 is identical with the amendment, while section 3017 and the amendment of September 8, 1902, to the charter of Yazoo City are identical. So that the amendment of September 8, 1902, is entirely consistent with section 3017 of the code, and all other provisions of chapter 93 of the code; and the amendment of November 15, 1901, is certainly consistent with section 3016 of the code and with section 3015 of the code, unless a less rate of interest than is prescribed in section 3015 is an inconsistency. And it would hardly be seriously contended that this is such an inconsistency as would be condemned by the court. Is the amendment of November 15, 1901, inconsistent with section 3014, within the condemnation of the law? It is true that the amendment does not embody the whole of the section, but it is hardly necessary that it should. Suppose, for instance, that Yazoo City had simply desired to amend her charter so as to give her the right to put in a waterworks system only,

and no other subject had been mentioned; would this have been an inconsistency such as the law would condemn? Must she take the whole of the section or none? Can she not take such part of it as she wishes? If she leaves out of her amendment the dotting of an "i" or the crossing of a "t," will it be condemned? Because she failed to place in her amendment the limitation that her bond issues should not exceed 7 per cent. of her taxable value without an election, and 10 per cent. with an election, is the whole amendment to be condemned? Especially when her proposed issuance of bonds, together with all outstanding bonds does not amount to even 7 per cent. of her taxable values. Will it not be time enough to condemn, as void, even if the amendment is not consistent with section 3014, when the issue exceeds 7 per cent. of the assessed value? That case is not now presented, and most likely will never be.

The record shows that the assessed value of real and personal property in Yazoo City is $2,702,931. Seven per cent. of this amount is $189,205.17. The present outstanding bonds are $5,080, to which add the proposed issue of $175,000, and we have a total of $180,080, or a fraction less than 6 2-3 per cent. of the assessed value of real and personal property in Yazoo City. But the argument of the other side is that not to fix a limit in the amendment is to permit the board of mayor and aldermen of Yazoo City to issue bonds in any amount—to open up the floodgates, as it were, and let the town council bankrupt the city by piling bonded debt upon bonded debt. If such an unfortunate condition of affairs should ever arise, we submit that it will be time then to look after it. Besides, no such power is committed to the town council. The people in the city have it in their own hands, under the amendments that are being so severely criticised, to say whether any bonds shall be issued. And it is very safe to assume that the people will not permit the city council to issue bonds in any amount or for any purposes other than for the city's good. In order to have an election as to whether any bonds shall issue, it is only neces-

sary that 20 per cent. of the adult taxpayers of the municipality shall petition against the issuance of the bonds, in which event they shall not issue until authorized by the majority of electors voting in an election to be ordered for that purpose. Notice must be given for three weeks in a newspaper published in the municipality of the proposed issuance of bonds, and thus the people are always on the notice of the amount to be issued, and the purposes for which they are to issue. In the present case no petition was presented to the board, because it could not be got up, presumably.

But the learned chancellor, in his opinion, says that the amendments are unconstitutional, under section 80 of the constitution, which reads, "Provision shall be made by general laws, to prevent the abuse by cities, towns and other municipal corporations of their power of assessment, taxation, borrowing money and contracting debts." With the greatest deference to the learned chancellor this section of the constitution has no more to do with the point involved in the present case than the king of the Fiji Islanders. Section 80 is simply an injunction to the legislature to pass a general law to prevent the abuses therein named. And the law to be passed is committed wholly to the discretion of the legislature, and must be general in its character; that is, applicable to every city, town, or village in the state, and not applicable merely to those accepting the code provisions as to municipalities. The legislature has passed such general law, and made it applicable to all cities, towns and villages; said law being section 3026 of the code, which provides the only general method that we have been able to find to prevent abuses mentioned in section 80 of the constitution. By section 3036, section 3026 is made applicable to all cities, towns and villages. The legislature evidently thought that section 3026 was ample to prevent the abuses referred to, and the legislature was sole judge of that. See *Rosenbaum* v. *Newbern*, 118 N. C., 83; 24 S. E., 1; 32 L. R. A., 123. It should be borne in mind, along this line, that Yazoo City, under her own char-

ter, had the right to vote an unlimited amount of bonds for waterworks, electric light, and other purposes, and doubtless this will be found true of many, if not all, of the municipalities that refused to come under the code provisions; and we cannot, therefore, see how it can be seriously contended that the legislature, as to such municipalities, had in view any provision other than section 3026 to prevent the abuse mentioned in section 80 of the constitution.

Up to this point we have argued the question without reference to the constitutionality of chapter 69, p. .79, of the acts of the legislature of 1900. If chapter 69, p. 79, of the acts of 1900, is constitutional, that ends all possible contention as to the validity of the amendments to the charter of Yazoo City, and also all question as to the validity of the bonds proposed to be issued under said amendments, for it will be observed from the record that every requisite step was taken, even to the minutest detail, in providing for and in the sale of the bonds. Chapter 69 of the acts of 1900 differs from section 3039 in this only: that under section 3039 amendments to existing municipalities must be consistent with the municipal chapter of the code, while under chapter .69, p. 79, of the acts of 1900, they need not be consistent with the municipal chapter of the code, but, as under section 3039, must be consistent with the constitution and laws of the United States and the constitution of this state. With what provisions of the constitution and laws of the United States and of the constitution of this state is chapter 69, p. 79, of the acts of 1900, in conflict? It will be well here to remember why section 88 of the constitution was enacted, said section reading as follows: "The legislature shall pass general laws, under which local and private interests shall be provided for and protected, and under which cities and towns may be chartered and their charters amended, and under which corporations may be created, organized and their acts of incorporation altered; and all such laws shall be subject to repeal or amendment." The manifest reason was to relieve

the legislature absolutely of the consideration of so much legis-
lation of a private character. Much of the time of the legisla-
ture had been occupied with private legislation, chief among
which were municipal charters and amendments thereto. This
was not only harrassing to the legislature, occupying much of
its valuable time, but was also very expensive to the state. A
remedy for this is provided for by section 88 of the constitution.
The evident purpose of that section is to relieve the legislature
entirely from consideration of the subject-matters named
therein. It is very questionable, indeed, if the legislature
could now pass a charter for any municipality, or an amend-
ment to an existing charter, save in the manner prescribed by
section 88; that is to say, grant authority in a general way,
and enable a municipality to take advantage of it. Unless this
is true, then the evil intended to be remedied by section 88
would only be half done. The scheme intended by section 88
was that the legislature should outline a general plan under
which municipalites might thereafter be chartered, and also a
general plan under which existing municipalities might have
their charters amended, thus saving valuable time to the legis-
lature, expense to the state, and providing an expeditious man-
ner in which charter amendments may be obtained. Surely
it was never contemplated that the municipality should have
no discretion as to what should be embodied in its amendments;
that the legislature must, in advance, specify, word for word,
the kind of amendment the municipality might make. Surely
it was never intended that a corporation accepting the provisions
of the municipal chapter of the code should never thereafter
in any way amend the same; and yet, if the conclusions of the
learned chancellor in this case are to prevail, that result would
follow, and the very purpose that section 88 of the constitution
had in view would be greatly emasculated. Section 88 evi-
dently means that the legislature, as to amendments, shall pro-
vide the general method, the manner, the mode, under which
amendments may be made. This was done by section 3039—

limited, however, by the condition that such acts must be consistent with the municipal chapter of the code. The legislature of 1900, seeing that this was an unreasonable and unnecessary restriction—one calculated to defeat the manifest purpose of section 88—removed the restriction, so that now, by pursuing the manner outlined by the legislature in chapter 69, p. 79, of the acts of 1900, amendments to the municipal charters may be made to any extent, so long as the provisions thereof are within the constitution and laws of the United States, and of the constitution and laws of Mississippi. It is simply the taking of another step toward permitting municipalities to amend their charters to suit their several necessities, which seems to be the trend of most legislatures and courts at this time. What evil can result from such a course?

Our friends on the other side say that this chapter 69, p. 79, of the acts of 1900, confers legislative power upon the municipality, and by section 33 of the constitution the legislative power of the state is vested in the legislature. They seem to lose sight of the fact that section 88 was inserted in the constitution for the very purpose of relieving the legislature of this class of legislation. Unless it is competent for the legislature to pass an act such as chapter 69, p. 79, of the acts of 1900, then what is to become of the first few sections of the municipal chapter of the code, whereby the limits and boundaries of unincorporated cities, towns, and villages may be defined, and whereby the present boundaries of cities, towns, and villages may be enlarged or contracted? How would it be possible for a legislature in a general way to define limits for every village to be thereafter incorporated—to define the limits to which boundaries of an existing corporation might be extended, or within which it might be contracted? It is absolutely necessary, to give full force and effect to section 88 of the constitution, to grant some discretion to municipal authorities, not only as to boundary, but as to many other subjects with which the municipality has to deal. Besides, it is familiar law that

the power of the legislature to enact laws, and the kind of laws it shall enact, is restricted or limited only where so expressly provided by the constitution. See *People* v. *Seumore,* 16 Cal., 332; 76 Am. Dec., 521; *Thorpe* v. *Rutland,* 27 Vt., 140; 62 Am. Dec., 625.

The question as to what is a delegation of legislative authority has been raised many times in this and other states. Every time the question has been presented in this state the court has uniformly overturned the objection that the given act was a delegation of legislative authority—notably in the case of *Alcorn* v. *Hamer,* 38 Miss., 652; *Schulherr* v. *Bordeaux,* 64 Miss., 59; 8 South., 201. In each of these cases the question as to whether that was a delegation of legislative authority was learnedly discussed by counsel and carefully considered by the court. This court, in the case of *O'Flinn* v. *McInnis,* 80 Miss., 125; 31 South., 584, overturned an amendment to the charter of Meridian, obtained under section 3039 of the code of 1892, because the same was inconsistent with section 3022 of the code of 1892, at the same time stressing the fact that the amendment was passed prior to the adoption of chapter 69, p. 79, of the acts of 1900. There is no escape from the conclusion that, had the amendment been passed after the acts of 1900, its inconsistency with section 3022 would have made no difference, and the same would have been upheld by the court, and properly so.

We also invite the court's attention to the case *In re* Madera Irr. Dist., 27 Am. St. Rep., 106; 92 Cal., 296; 28 Pac., 272, 675; 14 L. R. A., 755, where there is full discussion of the question as to the delegation of legislative power; also to the case of *State* v. *Doherty,* 58 Am. St. Rep., 39; 16 Wash., 582; 47 Pac., 958, where an amendment to the charter of Tacoma, which amendment was proposed by the council and adopted by the vote of the people, was expressly upheld; also to *Attorney General* v. *Shepard,* 62 N. H., 383; 13 Am. St. Rep., 576, and authorities there cited.

The court will also note that, under chapter 47 ("Fences and Stock"), code 1892, the boards of supervisors of the various counties are given almost plenary power with reference to fences, stock-law district, etc., and under chapter 54 ("Game and Fish") the boards of supervisors are given full authority for the protection and preservation of game and fish in their respective counties; and the right of the legislature to delegate this authority has never been questioned, as far as we know. Under chapter 25 ("Corporations"), even private corporations, other than railroads and insurance companies, are authorized to prepare their own charters, and to specify the powers to be exercised (see section 833): Again, it is familiar law that public corporations may be invested with the power which the legislature itself might have exercised. See *In re Madera Irr. Dist.*, 92 Cal., 296; 28 Pac., 272, 675; 14 L. R. A., 755; 27 Am. St. Rep., 106; *St. Paul* v. *Colter,* 12 Minn., 41 (Gil. 16); 90 Am. Dec., 278; *State* v. *Fourcade,* 45 La., Ann., 717; 13 South., 187; 40 Am. St. Rep., 249. But even if the court should think that a part of the ordinance amending the charter of Yazoo City is void, the whole ordinance does not necessary fall, unless the valid part cannot stand alone, or be separated from the void parts. *City of Tampa* v. *Salomonson,* 35 Fla., 446; 17 South., 581; *Canova* v. *Williams*, 41 Fla., 509; 27 South., 30; *New Orleans* v. *Chappus,* 105 La., 179; 29 South., 721.

As to the objection that section 3039 and the acts of 1900 were not referred to the committee on local and private legislation of the legislature of the house in which they originated: Under section 89, on which the other side rely, it would not have been proper to have referred either of the acts to such a committee, for the reason that neither of them was a local or private bill, but most general in their character.

The learned chancellor says in his decree that it almost clearly appears to him, under the decision of *Lum* v. *Vicksburg,* 72 Miss., 950, 18 South., 476, that section 88 of the constitution

is prospective in its operation; and, if this be true, that ends all questions as to the validity of the amendments to the charter of Yazoo City. If his vision as to the prospective idea is correct, his conclusion is irresistible, and section 88 goes "where the woodbine twineth." *Lum v. Vicksburg* only goes to the extent of holding that section 88 was never intended to force compulsory legislative repeals of existing municipal charters. This, to our mind, is too clear for further argument.

As to the fourth objection against the bonds, viz., that they are void because the voters were not given the opportunity to vote for or against the issuance of said bonds .for the several objects for which they are proposed, said proposed issue of bonds containing three separate and distinct objects, which should have been submitted separately. The case of *Kemp* v. *Town of Hazelhurst,* 80 Miss., 445; 31 South. 908, effectually settles this contention.

In conclusion, we beg to say that it is important to all parties connected with this litigation that the decision of the court go to the extent of determining unequivocally the validity or invalidity of the bonds which have been sold, but not yet issued, and which cannot be issued, now their validity has been questioned, until their validity is definitely determined by this honorable court.

*E. L. Brown* and *Barnett & Perrin, amicis curiae.*

Appellee not being represented by counsel, we ask the privilege, as friends of the court, to file a brief, representing, as we do, interests that may be affected by a decision adverse to him.

The validity of the proposed bond issue depends on the constitutionality of chapter 69, p. 79, of the acts of 1900, amending section 3039 of the code of 1892. It may also be insisted by appellant that the amendment under which the proposed bond issue is to be made conforms substantially to the requirements of section 3039 of the code of 1892.

(1) Is the act of 1900 unconstitutional? This act permits

amendments to charters of municipalities which have elected not to come under the municipal chapter of the code of 1892, and provides only that such amendments shall be consistent with the construction of the state of Mississippi and the constitution and laws of the United States. This act, we think, is unconstitutional, unless it can be sustained by section 88 of the present constitution. That section reads: "The legislature shall pass general laws under which local and private interests shall be provided for and protected, and under which cities and towns may be chartered and their charters amended, and under which corporations may be created, organized, and their acts of incorporation altered. . . ." Section 33 of the constitution vests the legislative power in the legislature. If there is any apparent conflict between sections 88 and 33 of the constitution, these sections must be reconciled, if possible. The argument of appellant is that section 88 limits section 33 and empowers the legislature to delegate its legislative powers, so far as cities and towns are concerned; that section 88 does not require that cities and towns shall be governed by general laws, but that they shall be chartered under general laws. Section 88 is construed as meaning the legislature shall by general laws provide for the framing of a municipal charter, or amendments thereto, by persons or bodies selected by the legislature for that purpose, and that such persons or bodies can confer by charter on municipalities any and all powers, provided they be consistent with the constitution of Mississippi and the constitution and laws of the United States; that, as towns and cities are to be chartered under general laws, such charters must emanate from some authority named by the legislature, and not from itself, and, inasmuch as such charter is conferred by this outside authority, this authority has the right to confer on the municipality powers limited only by the constitution of Mississippi and the constitution and laws of the United States. It is true that the charter may be granted by some person or body selected by the legislature, but it is also true that when such charter is granted

it must conform to general laws which the constitution requires the legislature to enact. It will be observed that the supposed necessity for some authority other than the legislature to grant the charter is wholly inferential, and has no foundation in fact, as, under section 88 of the constitution, the legislature could grant the charter without any delegation to an outside authority to do so. And while the legislature can delegate this naked power, as the legislature itself would have to enact general laws under which it could charter municipalities, certainly there must be general laws enacted by the legislature for the government of municipalities, to which the authority outside of legislature must conform in granting charters. Section 88 of the constitution requires general laws. Its purpose is to prevent special and local legislation—to secure uniformity. But how can this purpose be accomplished by the legislature enacting a law providing simply in what way charters can be granted, or amendments thereto made, while omitting to prescribe what such charters, and amendments thereto, shall contain? If it be true, as contended for by the appellant, that the act of 1900 is constitutional, then it is in the power of the legislature to enact a similar law for the creation of private corporations.

(2) As already stated, it will be urged by counsel for appellant that, while the act of 1900 may be unconstitutional, yet the amendment attacked substantially complies with the code municipal chapter, and can therefore be upheld under section 3039 of the code of 1892. This position assumes that section 3039 is constitutional, which we do not concede. If, however, section 3039 is constitutional, is the amendment attacked consistent with the code municipal chapter? Section 3014 of the code authorizes the issue of bonds, etc., by a city, town or village, in an amount not in excess of 7 per cent. of the assessed value of the taxable property of the city, town or village, unless authorized by two-thirds of the qualified electors thereof, but in no event can the amount issued exceed 10 per cent. of the assessed value. The amendment attacked has no such limita-

tions to it.   Under its terms, bonds and obligations to an un-
limited amount can be issued.   In passing on the constitution-
ality of a statute, courts do reject at times the parts held
unconstitutional, and uphold the law as far as it is constitu-
tional, but this is never done where the intention of the legis-
lature will be defeated.   Under its charter, and before this
amendment, Yazoo City could, under its charter, when au-
thorized to do so by two-thirds of its qualified electors, issue
bonds in an unlimited amount.   (Section 66 of the charter.)
Under section 3039 of the code, the proposed amendments are
to be prepared in writing, and are to be published for three
weeks in a newspaper.   If one-tenth of the qualified electors
object to the amendment, the amendment is then submitted to
a vote, and can only be adopted when ratified by a majority of
the electors of the municipality.   The preparation in writing
of the amendment, and its publication, are required, so that
no amendment can be adopted without the consent of at least
a majority of the electors of a municipality.   Amendments
must either expressly or impliedly receive the sanction of the
electors.   This being the purpose of section 3039, manifestly
the amendment prepared in writing and published must be the
amendment adopted, and no other.   To reject any part of the
prepared and published amendment—to qualify it in any re-
spect, and declare it adopted as thus qualified—would be the
adoption of something the electors had never had the opportu-
nity to reject.   To uphold this amendment by reading into it
the limitations contained in section 3014 would be giving effect
to an amendment not adopted in the manner required by section
3039.   Citizens of Yazoo City had the right, under section 66
of its charter (Laws 1884, p. 596, ch. 405), to issue bonds in
an unlimited amount, provided two-thirds of the qualified elec-
tors ratified the issue.   An amendment is prepared, which, in
terms, still leaves the amount for which bond may be issued
unlimited, but providing another method for the ratification
of the bond issue.   As thus prepared and published, it met with

no protest, perhaps for the reason that the amount of issue was by the amendment still left unlimited. In the face of all this, the court is requested to read into the amendment the limitations imposed by section 3014, and declare that in the adoption of the amendment there has been a substantial compliance with section 3039. It may be that the electors, who by their silence, assented to the amendment as proposed, would not have assented to an amendment with a 7 per cent., or even a 10 per cent., limitation, believing that neither amount would be sufficient to establish the proposed plant. We think, also, that section 3039 of the code of 1892 is unconstitutional. All it requires is that the amendment provided for by it shall be consistent with the code municipal chapter. . This is a delegation of legislative power. There could be an amendment consistent with said chapter, or, rather, not inconsistent with it, as such amendment might cover matters not contemplated by said chapter. We understand the law in this state to be that the legislature only can enact laws. We also appreciate the fact that the operation of such laws can be made dependent upon a contingency. But the law which is to operate when the contingency happens must be a law complete in itself. In *Lum* v. *City of Vicksburg,* 72 Miss., 950; 18 South., 476, the court held that that was a complete law, which, as to existing municipalities, became operative or inoperative upon its acceptance or rejection by the municipality. Section 3039 goes far beyond this. It permits municipalities existing at the time of the adoption of the constitution to adopt any one of the sections in the municipal code chapter as an amendment to its original charter. The municipal code chapter, if treated as a law enacted by the legislature, to be adopted on a contingency, must be adopted as a whole. To permit a municipality to adopt any particular provision of said municipal code chapter, and reject the other portions of said chapter, is to permit said municipality to pass upon the expediency or inexpediency of the law, and this would be unconstitutional.

(3) It may be that, under the allegations of the bill of the appellee, he has shown no grounds for an injunction; and, if this be true, this court may not be called upon to pass upon the merits of the case.  Appellant has waived, or attempted to waive, any objection of this kind, so as to get this court to pass upon the constitutionality of these laws.  Whether or not such waiver can be made, we submit to the court.  But if the court holds that it has jurisdiction, we know that it will give a very careful consideration to all questions involved.

On the third point suggested in our brief, we desire further to call the attention of the court to the following facts:

That it is apparent that the present suit is a friendly one. This is manifest not only from the fact that appellant has waived, or attempted to waive, an important matter as to the granting of the injunction, viz., whether, if the grounds as alleged in the appellee's bill are true, the appellee would be injured by the issuance of the bonds, but also from the fact that appellee, in a case of this importance, is unrepresented in the court by counsel.  Under the state of affairs, we doubt very much whether the court is called upon to pass upon the constitutionality of a statute.  The United States supreme court, in *Chicago, etc., R. Co. v. Wellman,* 143 U. S., 339; 12 Sup. Ct,. 400; 36 L. Ed., 176—a friendly suit—refused to pass upon the constitutionality of an act of the legislature of the state of Michigan, and, in discussing the question, among other things, says: "The theory upon which, apparently, this suit was brought, is that parties have an appeal from the legislature to the courts, and that the latter are given an immediate and general supervision of the constitutionality of the acts of the former.  Such is not the case.  Whenever, in pursuance of an honest and actual antagonistic assertion of rights by one individual against another, there is presented a question involving the validity of any act of any legislature, state or federal, and the decision necessarily rests on the competency of the legislature to so enact, the court must, in the exercise

of its solemn duties, determine whether the act be constitutional
or not; but such an exercise of power is the ultimate and
supreme function of courts." ' If this principle is true, and
this court is satisfied that this is really not a suit "in pursuance
of an honest and actual antagonistic assertion of rights by one
individual against another," then we submit that the constitu-
tionality of the question involved should not be passed on.

On the question of the constitutionality of section 3039 and
the acts of 1900, we desire to call the attention of the court to
the case of *Ex parte Moore*, 62 Ala., 471. In this case there
was a general law for the incorporation of municipalities. The
town of Numford, however, had had a special act of the legis-
lature passed, incorporating it, but had never pretended to act
under the special act, but attempted to incorporate under the
general law, a law which provided not only the machinery by
which a town could be incorporated, but was general in its pro-
visions as to the manner of the government of the town in all
particulars. It was held that such act on the part of the town
was illegal, and that towns could not have at one and the same
time two existing charters. *Ex parte Moore*, 62 Ala., 471;
Code (Aa.), 1876, § 1763, *et seq.*

We do not think the argument in the brief of counsel for
appellant that, if this law is unconstitutional, then the charter-
ing of all private corporations must be unconstitutional, is at
all sound. Private corporations have not the power to pass
laws declaring certain acts unlawful, while municipal corpora-
tions have such power; and the fact that such law with regard
to municipalities, under the code of 1857, was enacted, and not
declared unconstitutional, seems to be more than met by the
fact that it was repealed.

Argued orally by *J. A. P. Campbell*, for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The question presented for decision is whether section 3039

of the code of 1892 is constitutional, and also whether the act of March 12, 1900, p. 79, ch. 69, amending section 3039 of the code, is constitutional.

The only difference between section 3039 and the act amending it is that the former requires amendments of the charters of municipalities not governed by the code chapter to be consistent with the provisions of the chapter, whereas the amending act permits such amendments, though inconsistent with the provisions of the code chapter on municipalities. The ground on which the constitutionality of these acts is challenged is that, as claimed, they delegate the exercise of legislative power to municipalities. It is claimed that, under section 88 of the constitution these acts are unconstitutional. That section is as follows: "The legislature shall pass general laws under which local and private interests shall be provided for and protected, and under which cities and towns may be chartered and their charters amended, and under which corporations may be created, organized, and their acts of incorporation altered; and all such laws shall be subject to repeal or amendment." The argument is thus clearly put in an excellent brief filed by learned counsel, as *amicus curiae*: "It is true that the charter may be granted by some person or body selected by the legislature, but it is also true that, when such charter is granted, it must conform to general laws which the constitution requires the legislature to enact. It will be observed that the supposed necessity for some authority other than the legislature to grant the charter is wholly inferential, and has no foundation in fact, as, under section 88 of the constitution, the legislature could grant the charter without delegation to an outside authority to do so. And while the legislature can grant this naked power, as the legislature itself would have to enact general laws under which it could charter municipalities, certainly there must be general laws enacted by the legislature for the government of municipalities, to which the authority outside of the legislature must conform in granting charters. Section 88 of the constitution requires gen-

eral laws.    Its purpose is to prevent special and local legisla-
tion—to secure uniformity.    But how can this purpose be ac-
complished by the legislature enacting a law providing simply
in what way charters can be granted, or amendments thereto
made, while omitting to prescribe what such charters, or amend-
ments thereto shall contain?"

We cannot concur in this construction.    It will be observed
that counsel frankly state that, under their view of section 88
of the constitution, the legislature must not only pass a law
general as to the manner in which the charters of municipalities
may be amended, but such general law must actually contain,
and fully set out, the entire contents of the municipal charters,
or the entire contents of the amendments of municipal charters.
Such general law, under that view, must not only be uniform
in prescribing the mode in which such charters are to be
granted or amended, but for all municipalities coming under
the code chapter the charters must be the same throughout all
their contents, and, for municipalities not coming under the
code, the contents of each charter, or each amendment, must
be prescribed minutely by the legislature.    This is the inevita-
ble deduction from the argument for the supposed uniformity.
We say "supposed uniformity," because it is obvious that there
would clearly be no uniformity, as to the contents of such char-
ters, save in municipalities governed by the code chapter.    For
them the code chapter would be the charter; but, as to munic-
ipalities not governed by the code chapter, each one might have
charter provisions different from every other one, and there
would be no such uniformity as the view presupposes.

The framers of the constitution must have seen this incon-
gruity, and since it was optional with the municipalities to come
under the code chapter, or stay out, and since, as to all which
stayed out, uniformity as to the contents of their charters was
impossible, the inference is irresistible that the framers of the
constitution never meant section 88 to secure uniformity in the
contents of the charters of municipalities.    Suppose (a con-

dition which might have happened) one-tenth only of the municipalities had come under the code chapter; clearly this supposed uniformity would exist as to one-tenth, and not exist as to nine-tenths, of the municipalities in the state. Is it conceivable that the framers of the constitution, building with respect to existing as well as future conditions, would adopt a provision, under the practical operation of which such a condition as supposed above could obtain, if their purpose had been to secure uniformity as to the contents of charters by section 88? Manifestly not. Again, what an utterly incongruous situation we would have under counsel's construction in another respect, to wit: The framers of the constitution would be put in the attitude, whilst seeking the supposed uniformity, of actually providing themselves two sorts of charters for municipalities—one, the code chapter on municipalities, for all coming under it, and, for all not coming under it, as many different charters as each municipality might ask at the hands of the legislature.

. Counsel surely overlooked the folly which this view would attribute to the framers of the constitution. The truth is not only that the framers of the constitution never intended the charters of municipalities to be uniform in their contents, but that it would have been exceedingly unwise to have made any such provision. There was a uniformity intended to be secured, but that was uniformity only as to the general mode of granting and amending charters. It was thought far more convenient, as ridding the legislature of useless special applications for such charters and their amendments, and as securing for the public service far more important legislation, the time that had theretofore been uselessly consumed in the consideration of such special application, to direct that thereafter—that is to say, after the adoption of said section 88—the legislature should provide a general law, prescribing a uniform mode, in conformity with which municipal charters should be granted and amended. That the legislature has done. The code chapter executes the mandate as to all municipalities coming under

it, and section 3039 executes it as to all other municipalities. Section 3039 is as perfectly a general law as the code chapter on this subject. One is general as to one class of municipalities; the other is general as to the other class of municipalities. Section 3039 not only possesses the characteristics of a general law, in prescribing for all corporations not coming under the code chapter, and which preserve their original charters, the mode whereby they might amend such charters, but also secures uniformity as to this mode of amending their charters by all municipalities. But we have said it would have been exceedingly unwise on the part of the framers of the constitution to have attempted to secure uniformity in municipal charters. The principle is thoroughly established that the legislature may commit to local agencies the framing of such provisions as will best conserve their varied local interests. No legislature is as competent to frame such provisions as are the properly constituted authorities of such local subdivisions of the government. It is the very essence and soul of local home rule that they should be permitted to provide the manifold provisions imperatively called for by the multitudinous different needs of different communities. The doctrine is thus accurately expressed by Mr. Cooley: "The maxim that legislative power must not be delegated is to be understood in the light of the immemorial practice of this country and of England, which has always recognized the policy and propriety of vesting in the municipal organization certain powers of local regulation, in respect to which the parties immediately interested may fairly be supposed more competent to judge of their needs than any central authority." Again he says: "The right of the legislature, in the entire absence of authorization or prohibition, to create towns, etc., and confer on them the power of local government, and especially of local taxation and police regulations usual with such corporations, would always pass unchallenged."

The constitution of 1890 was framed by great lawyers in full view of this legal principle, and also with full knowledge of the

immemorial usage in this state in such matters.    See *Alcorn* v. *Hamer,* 38 Miss., 652; *Williams* v. *Cammack,* 27 Miss., 221; 61 Am. Dec., 508; *Barnes* v. *Pike County,* 51 Miss., 305; *Schulherr* v. *Bordeaux,* 64 Miss., 59; 8 South., 201; *Lum* v. *Vicksburg,* 72 Miss., 950; 18 South., 476.    It was provided in the code of 1857 (ch. 35, art. 1, §§ 1-3) how corporations might be created; section 1, art. 1, providing "that the persons desiring to be incorporated" might prepare a charter, which should contain, among other things, "the powers to be exercised," and providing that, after approval by the governor and attorney general, "the powers therein specified should be vested in the corporation," and also providing that such charters might be "amended or renewed in like manner."    This has been the law practically ever since, and the only change—a very great and useful change, it is true—acomplished by section 88 of the constitution is in providing that the legislature should be freed from the nuisance of having to deal separately with each and every charter and its amendments; referring the granting and and amending of such charters, as to the mode of granting them and the mode of amending them, to the operation of general law.    The fallacy of the opposite view is in supposing that the code chapter on municipalities was essential to the execution of the mandate of section 88 of the constitution.    Had that chapter not been adopted, the legislature would have complied perfectly with the mandate of section 88 of the constitution, by passing some statute like section 3039 of the code, whereby a uniform mode of granting and of amending charters might have been prescribed.

The code chapter on municipalities is, in our judgment, an exceedingly wise one.    It furnishes for all municipalities which do come under it a charter doubtless far superior to most which would be otherwise drawn.    And it is a little difficult to perceive why there is any hesitation to avail of its provisions, except in those cases where certain local conditions, in certain quarters, make their original charters better suited to the needs

of certain municipalities.   But all this granted, it is an exceed-
ingly erroneous idea to entertain that section 88 of the consti-
tution requires the contents of charters of municipalities to be
prescribed by some uniform legislative act, or that the legisla-
ture, in adopting the code chapter, was complying with any
such supposed mandate of said section 88.   That view is at
war with immemorial usage in this state on this subject, with
the whole trend of our decisions on the subject, and with what
wisdom imperatively requires, as demanded by the varying
needs of different communities.

One or two other considerations may be indulged: All cor-
porations other than municipal corporations, railroad corpora-
tions (other than street railroads), and insurance corporations,
are provided for, as to the granting and amending of their
charters, by chapter 25 of the code of 1892.   Section 833 of
that chapter is substantially identical with chapter 35, art. 1,
of the code of 1857, heretofore referred to.   The able lawyers
who framed the code of 1892 expressly provided, in section 833,
that "The persons desiring to be incoorporated" may prepare
their own charter, setting out themselves, therein, "the pow-
ers to be exercised," and all its contents; and said charters,
when approved by the governor and attorney-general, become
the law of the corporation; and section 834 provides for
amendments to be made similarly.   These learned code com-
missioners knew that the legislature, in obeying section 88 of
the constitution, which declares that "the legislature shall pass
general laws under which corporations may be created, organ-
ized, and their acts of incorporation altered," had perfect power
to provide a law such as sections 833, 834, prescribing simply
and merely a uniform mode, according to which corporations
might obtain and amend their charters, without prescribing any
such uniformity as to the contents of the charters.   What the
charters would contain would depend upon the 10,000 busi-
nesses incorporated, just as what municipal charters should
contain depends upon the varying needs of every community.

And it is perfectly obvious that, in executing the mandate of section 88 of the constitution, the legislature had precisely the same power to authorize the incorporators of municipalities to frame charters, and state the powers to be exercised that it had in the case of the corporations provided for by chapter 25 of the code of 1892. Section 88 commands the legislature to pass general laws, as to both municipal corporations and other corporations (of the kinds stated above), respecting the granting and the amending of their charters, and the power of the legislature is the same as to both. It is also very pertinently asked by counsel for appellant how section 2912*a et seq.* and section 2921 of the code of 1892, which are general laws providing a uniform mode by which the boundaries of then existing municipalities might be enlarged or contracted, and by which hamlets and villages to become incorporated thereafter might define their boundaries, could be passed by the legislature, unless it had the power to authorize such existing municipalities and such hamlets and villages to specify, themselves, the contraction or enlargement of boundaries desired in the one case, or the definition of boundaries desired in the other?

There is nothing in the proposition that the different improvements were not voted for separately. The complete reply is that no law required this to be done. We have given this case the careful consideration which its great importance demands, and have not failed to weigh fully the opinion of the very accomplished chancellor of the court below. We have been unable to concur in the view which he announced. We think both section 3039, and the act of 1900 amending it, are perfectly valid legislative acts.

We direct the reporter to set out in full the briefs of all counsel in this case. We have derived great aid from them ourselves, and they will facilitate the profession in investigating the matter.

We think the suggestion untenable that this is not a real contest between the parties. The court below treated it as such,

and it manifestly is "a suit in pursuance of an actual antagonistic assertion of rights by one party against another."

*Reversed and remanded.*