HENRY M. LOVE v. YAZOO CITY.

[44 South., 835.]

1. MUNICIPAL CORPORATIONS. *Special charters. Amendment. Statutory authority.*

By a proceeding under Code 1892, § 3039, as amended by law 1900, p. 79, ch. 69 (Code 1906, § 3444), a city having a special legislative charter may adopt an amendment thereto, providing for its owning and operating an electric street railway and issuing bonds therefor.

2. SAME. *Legislative authority.*

The Legislature has authority to confer on municipalities the power to own and operate an electric railway although that business be inconsistent with the customary functions of a municipality.

3. SAME. *Indebtedness. Limitations. Statutes. Applicability.*

A city operating under a special charter is not affected by Code 1892, § 3014, limiting the amount of bonds a city may issue; the section being applicable only to municipalities which operate under the Code chapter on "Municipalities."

FROM the chancery court of Yazoo county.

HON. G. GARLAND LYELL, Chancellor.

Love, the appellant, was complainant in the court below; Yazoo City, appellee, was defendant there. The purpose of the suit was to enjoin the issuance of municipal bonds. From a decree sustaining the defendants' demurrer to the bill of complaint and dismissing the suit, complainant appealed to the supreme court.

The charter of the city of Yazoo was granted by the Legislature in 1884, before the Code chapter on "Municipalities" (Code 1892) was adopted, and the city declined to come under the Code chapter entitled, "Municipalities, but amended its charter in 1901 and 1902, in pursuance of Code 1892, § 3039,

and the act of 1900 (Laws 1900, p. 79, ch. 69), amendatory of the Code section. These amendments to the charter consisted in the adoption of §§ 3014, 3015, 3016, and 3017 of the Code, except the clause of § 3014, restrictive of the amount of indebtedness to be incurred.

Under these amendments the city was about to issue bonds to provide funds for the construction of an electric street railway within its corporate limits, when the present suit was begun to enjoin their issuance.

The bill alleged that the complainant was a citizen and taxpayer of the municipality; that the bonds, sought to be issued, " are irregular and void because, (1) said bonds have not been regularly and legally issued as required by the charter and ordinances of Yazoo City, and the steps necessary to the legal and valid issuance of bonds by said city through its mayor and board of aldermen have not been followed; (2) the power attempted to be conferred upon said city to build a street railway by the amendment of 1901 to its charter is void because it is vague and uncertain in its meaning; (3) the power and right to build said street railway, if it be contained in express words in the said amendment, is void, because the building, owning and operating of a street railway is not a proper function of municipal government, being violative of the laws and constitution of Mississippi."

The bill further alleged that if the proposed bonds should be issued, § 3014 of the Code of 1892 (Code 1906, § 3415), prescribing that a municipality may issue bonds for public improvements not to exceed however seven per cent of the assessed value of the taxable property of the municipality, would be violated.

*Campbell & Campbell,* for appellants.

If the municipality has authority to engage in the business of owning and operating an electric railway within its limits, such authority must exist either by virtue of the inherent

power of the municipality, or by virtue of a legislative grant.

Yazoo has never adopted the Mississippi Code Chapter on Municipalities, and its municipal charter, granted by the Legislature in 1884, does not confer upon it the right to engage in the uncertain and hazardous business of operating a street railway.

The appellee relies upon the case of *Yazoo City* v. *Lightcap,* 82 Miss., 148; s.c., 33 South., 949, to uphold the validity of the issuance of the bonds, upon the alleged ground that an amendment to the municipal charter giving the city the right to issue bonds for sundry improvements, was passed upon by this court and held valid, and that, as a result, the right of the city to issue bonds for the building and operation of a street railway is practically *res judicata.* There is a wide difference between the case now under consideration and the case cited. In the *Lightcap case* it was shown that the city had the right " to establish and construct waterworks within and beyond the. city limits," Laws 1884, article 24. Moreover, in the case cited, the limitation of indebtedness, fixed by law at seven per centum of the city's assessed valuation of property was not exceeded. In the present case, if the bonds now desired by the appellees shall be issued this limit of seven per centum will be exceeded.

Section 88 of the state Constitution was not intended to authorize the Legislature to vest the power in the governor and attorney-general to amend charters so as to authorize cities to engage in business foreign to the customary functions and purposes of municipalities, and we call attention to § 80 of the Constitution which recites that " provision shall be made by general laws to prevent the abuse by cities . . . of their powers of borrowing money and contracting debts."

In the *Lightcap case, supra,* this court said that Yazoo might own and operate its own electric light plant, and it was not long before the city had to soothe the wounded feelings of women made widows by the city's negligent operation of

the plant, as, instanced, in the case of *Yazoo City* v. *Birchett,* 89 Miss., 700, where the city was compelled to pay damages in the sum of $10,000 for wrongful death.

*Hugh C. Watson,* for appellees.

Two questions present themselves on this appeal: first, what powers the Legislature granted to the municipality; and, second, whether the method by which the powers were so granted was regular.

If the Legislature had the power to grant authority to the municipality, through the amendments to the charter, to construct and operate street railways, then Yazoo City is vested with such power under the amended charter. Whether such legislative power exists must be learned from the following sources, namely, judicial construction and legislative opinion. Considering the first of these two sources, it seems clear that the Legislature had the power to grant unto the municipality the right to exercise functions such as are complained of here, either by direct grant through legislative enactment to the municipality, or by the method of amendment provided by statute law. *Williams* v. *Camack,* 27 Miss., 219; *Shepperd* v. *Dowling* (Ala.), 28 South., 739; *People* v. *Gallagher,* 4 Mich., 244; *Wire Co.* v. *Brown* (Iowa), 20 N. W. Rep., 436; *Steamboat Co.* v. *Foster,* 48 Am. Dec., 248; *People* v. *Mahaney,* 13 Mich., 481; 8 Cyc., 775. Considering the second of these two sources, that of legislative opinion, expressed in statutory enactments, we submit that this is the best expression of the public policy to be pursued on a given question, and upholds the contention of the appellees.

We do not agree with learned counsel for appellant in the claim that a municipality has not inherently the right to exercise functions which, while increasing the burden of taxation, will result in great public improvements for the benefit of all the citizens of the municipality. The scope of municipal functions is now, and has ever been, so extensive and varied

as to be limited only by the necessities of each individual city. History tells us of the splendid harbor and lighthouse facilities of ancient Rhodes; of the waterworks system of Carthage; of the harbor of Syracuse fortified under the supervision of Archimedes; of the sewers and aqueducts of Rome. In modern times we find the city of Amsterdam digging its own canal to the sea; the city of Mexico tunneling a way for its sewerage under the mountains to the sea; the cities of Manchester and Liverpool canalizing the river Mersey for the reception of the great ocean liners, at immense cost; the city of Chicago constructing its great drainage canal into the Illinois river; the city of New York building the great Croton reservoir; the city of Galveston lifting its city grade *in solido* above the danger of high tidal waves.

There can be no sound reason based upon public policy which would cause the courts to refuse to permit a city to exercise the power of municipal ownership of its public utilities. If a city may farm out its utilities, it follows that it may itself use them. If such utilities are so profitable as that capitalists are constantly and eagerly searching after them, often attempting to bribe corrupt aldermen to secure franchises, it would be a sound policy for the municipality to be allowed to retain them. Many cities in this state are even now groaning and chafing under the burden of imprudently made contracts made with private corporations in regard to water, light and other conveniences. See *Light, etc., Co.* v. *City of Jackson,* 73 Miss., 598; *Water Works Co.* v. *City of Meridian,* 85 Miss., 515; *Griffith* v. *Vicksburg Water Works,* 40 South., 1011.

As regards the second question presented, whether the method by which the powers of the municipality were granted, was regular, we call attention to the fact that the method of the amendment of Yazoo's charter was passed upon and upheld by this court, and held to be constitutional. *Yazoo City* v. *Lightcap,* 82 Miss., 148. See also *City of Jackson* v. *Whiting,* 84 Miss., 163.

MAYES, J., delivered the opinion of the court.

Yazoo City is operating under a special charter granted in 1884, and has never adopted the Code chapter on " Municipalities." This being the case, its charter was amendable under § 3039, Ann. Code 1892, as amended by Laws 1900, p. 79, ch. 69 (§ 3444, Code 1906). The allegations in the bill show that the amendment in question was adopted after the act of 1900, and that at no stage of the proceedings leading up to the amendment and issuance of the bonds was there any protest filed. The bill further shows that all proceedings leading up to the amendment were in strict conformity to § 3039, Ann. Code 1892, and Laws 1900, p. 79, ch. 69. The only substantial difference between the act of 1900 and § 3039 of the Annotated Code of 1892 is that the right of a municipality entitled to avail itself of the provisions of the act is enlarged by the act of 1900, in that the only limitation that a municipality is now under, with reference to its power to amend its charter, is that it make no amendment of its charter that violates the laws or Constitution of the United States or the Constitution of the state. The act expressly provides that it may make amendments that are inconsistent with the chapter on " Municipalities " as provided in the Code.

What is the amendment adopted by the city of Yazoo about which complaint is made? It is that amendment which provides for the owning and operating of an electric railway and the issuance of bonds therefor. Such a purpose violates no law of the United States. It violates no section of the Constitution of the United States. It violates no clause of the Constitution of the state. The act of the Legislature has given municipalities operating under special charters the power to so amend their charters as to do anything they may wish, provided only that the amendment does not conflict with the enumerated laws. The most that can be said in reference to the city's engaging in the owning and operating of an electric railway system is that it is a business inconsistent with the customary

functions of a municipality; but the Legislature has given it power to do this, if it sees fit, by express terms.  The power of the Legislature to do this cannot be questioned.  The Legislature was careful to guard the rights of the citizens of a municipality, in that it first requires that the proposed amendments be published, and if, after publication, one-tenth of the qualified electors protest, the amendment cannot be adopted until it has been submitted to an election and carried by a majority of the electors.

It is further contended by counsel for appellant that § 3014 of the Annotated Code of 1892 is violated, in that the issuance of these bonds makes the bonded indebtedness of the city exceed seven per cent of the assessed valuation of the property. The answer to this is that Yazoo City is not operating under this chapter, and is not, therefore, affected by any of the provisions of the Code Chapter on "Municipalities," save those made applicable in express terms to all municipalities; and § 3014 is not one of them.  The case of *Yazoo City* v. *Lightcap,* 82 Miss., 148; 33 South., 949, is decisive of this case. We must not be understood as applying anything said in this decision to any municipality except those operating under a special charter.

The decree of the chancellor, sustaining the demurrer and dismissing the bill, is *affirmed.*